[No. 30547-0-II. Division Two. February 23, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. TIMOTHY ENRIQUE JORDEN, *Appellant*.

*Rebecca W. Bouchey*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

¶1 MORGAN, A.C.J. — The issue in this appeal is whether a police officer violates article I, section 7 of the Washington Constitution by randomly viewing the guest register of a motel. The trial court answered no, and so do we. Accordingly, we affirm.

¶2 The Golden Lion Motel is in Lakewood, Washington. When a guest checks in, an employee fills out a guest registration form and photocopies the guest's driver's license or other picture identification. The form and the photocopy are then retained at the front desk.

¶3 As part of a program called the "Lakewood Crime-Free Hotel Motel Program,"[1] the Golden Lion allows deputies from the Pierce County Sheriff's Department to ran-

---

[1] Report of Proceedings at 11.

domly view its guest registry. By running the names through a law enforcement computer, the deputies then check for outstanding warrants. The deputies act without individualized suspicion, probable cause, or a search warrant.

¶4 On March 15, 2003, Deputy Reynaldo Punzalan went to the Golden Lion, viewed its guest registry, and ran the names for warrants. He found that one of the names, Timothy Jorden, had two outstanding warrants. Punzalan and other deputies went to Jorden's assigned room and knocked. When a woman opened the door, the deputies entered and arrested Jorden.[2] On a table in the room, the deputies saw cocaine, which they seized.[3]

¶5 The State charged Jorden with unlawfully possessing cocaine. He moved to suppress based on unlawful search and seizure, but the trial court denied the motion. A jury convicted, and this appeal followed.

■ ¶6 Article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." We agree with both parties[4] that article I, section 7 should be analyzed independently of the fourth amendment to the United States Constitution.[5] We do not consider the Fourth Amendment, which the parties agree permits the police to do what they did here.[6]

■ ¶7 Given the wording of article I, section 7, we must determine whether, when police view a motel guest's registration form at the motel's front desk, they disturb the

---

[2] Although Jorden notes that the police entered "without permission," Br. of Appellant at 2, he does not argue that their entry was without consent. The apparent reason is that police with a valid warrant need not obtain consent. *See* RCW 10.31.040; *State v. Alldredge*, 73 Wn. App. 171, 178, 868 P.2d 183 (1994).

[3] The deputies also seized a firearm that Jorden later pleaded guilty to possessing unlawfully. Jorden does not separately challenge the firearm conviction, so we omit it from the text.

[4] Br. of Appellant at 3; Br. of Resp't at 9-10.

[5] *See State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

[6] Br. of Appellant at 3; Br. of Resp't at 5 n.3; *see, e.g., United States v. Cormier*, 220 F.3d 1103, 1108 (9th Cir. 2000).

guest's "private affairs." "This determination is not 'merely an inquiry into a person's subjective expectation of privacy but is rather an examination of whether the expectation is one which a citizen of this state should be entitled to hold."[7] It requires an assessment of "the nature and extent of the information that police learn about a person's personal contacts and associations" and "the extent to which the subject matter is voluntarily exposed to the public."[8] The defendant has the burden of showing that his "private affairs" were disturbed in a way that implicates article I, section 7.[9]

¶8 The Washington Supreme Court has applied these principles in several cases. The court has held, for example, that the police disturb a person's "private affairs" by searching his or her garbage,[10] by viewing his or her long distance phone records,[11] or by stopping his or her car at a roadblock established to detect and arrest intoxicated drivers.[12] On the other hand, the court has held that the police do not disturb a person's "private affairs" by viewing his or her power consumption records[13] or his or her Department of Licensing driver's record.[14]

¶9 Except possibly for power consumption records, these holdings can be distinguished by ascertaining the degree to which the intrusion is likely to reveal affairs conducted in private, as opposed to affairs conducted in public. Garbage, phone records, and stopping a car are likely to disclose

---

[7] *State v. McKinney*, 148 Wn.2d 20, 27, 60 P.3d 46 (2002) (quoting *City of Seattle v. McCready*, 123 Wn.2d 260, 270, 868 P.2d 134 (1994)).

[8] *McKinney*, 148 Wn.2d at 29.

[9] *State v. Jackson*, 82 Wn. App. 594, 601-02, 918 P.2d 945 (1996).

[10] *State v. Boland*, 115 Wn.2d 571, 578, 800 P.2d 1112 (1990).

[11] *Gunwall*, 106 Wn.2d at 63.

[12] *Seattle v. Mesiani*, 110 Wn.2d 454, 457-58, 755 P.2d 775 (1988).

[13] *In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 945 P.2d 196 (1997) (Madsen, J., concurring and Guy, J., dissenting).

[14] *McKinney*, 148 Wn.2d at 32.

much about what goes on inside the home or car. Driving records compile activities that have transpired in public.

¶10 Conversely, these holdings cannot be distinguished by analyzing whether the intrusion will reveal a person's name, address, or date of birth. That was likely in each of the cases just discussed, yet some went one way and some went the other.[15]

■ ■ ¶11 Based on these observations, we hold that when the police viewed Jorden's motel registration form, they did not disturb his "private affairs" within the meaning of article I, section 7. Although no one put Jorden's registration form (or even a sample form) into evidence here, we infer that it showed that he had checked in, his room number, and the information on his driver's license or other photo identification (e.g., name, address, date of birth, physical description and picture, driver's license number). Checking into the motel was a very public act that anyone could observe, and thus was not a "private affair," just as walking to his room and any later exits or reentries were not "private affairs." His physical description and appearance were open to the public and thus not a "private affair." He did not have a reasonable expectation of privacy in his name or, at least under the circumstances here, in his address or date of birth. As far as our record indicates, the registration form said nothing that would reveal private activities inside the room.[16] Jorden bore the burden of showing that his "private affairs" had been disturbed, and he did not sustain that burden here.

¶12 The parties cite and debate RCW 19.48.020, but it does not help here. Although it requires that registration

---

[15] *See also State v. Chryst*, 793 P.2d 538, 541, 542 (Alaska Ct. App. 1990) ("majority of courts" conclude "that a person has no reasonable expectation of privacy in his name and address" and that "person's name and address, by themselves, do not constitute information about which a person can have a reasonable expectation of privacy which society is willing to recognize"); *accord Commonwealth v. Duncan*, 572 Pa. 438, 817 A.2d 455, 459, 466 (2003).

[16] Jorden has not shown, for example, that the registration form listed his long distance phone calls, if any. *See Gunwall*, 106 Wn.2d at 63.

records be maintained, it neither creates nor refutes a privacy interest in such records.

¶13 Based on the foregoing, we conclude that the police did not intrude into Jorden's "private affairs" within the meaning of article I, section 7 and that the trial court did not err by denying his motion to suppress.

¶14 Affirmed.

HOUGHTON and HUNT, JJ., concur.

Review granted at 155 Wn.2d 1011 (2005).