156 P.3d 893 (2007)
STATE of Washington, Respondent,
v.
Timothy Enrique JORDEN, Petitioner.
No. 76800-5.
Supreme Court of Washington, En Banc.
Argued January 26, 2006.
Decided April 26, 2007.
*894 Rebecca Wold Bouchey, Attorney at Law, Mercer Island, WA, for Petitioner.
Todd Andrew Campbell, Pierce County Pros. Attorneys Office, Tacoma, WA, for Respondent.
Douglas B. Klunder, Attorney at Law, Seattle, WA, for Amicus Curiae on behalf of American Civil Liberties Union of Washington, Amicus Curiae on behalf of Pacific Hospitality Investment, Inc.
BRIDGE, J.
¶ 1 Timothy Jorden appeals his conviction for unlawful possession of cocaine. On March 15, 2003, a Pierce County deputy sheriff conducted a random warrant check of the Golden Lion Motel's guests via the guest registry and discovered Jorden's presence at the Lakewood motel as well as the fact of two outstanding warrants for Jorden's arrest. Deputy sheriffs then entered Jorden's motel room in order to arrest him for the outstanding warrants. Upon entering the room, officers saw cocaine in plain view. Jorden contends that the random check of the motel registry revealing his whereabouts constitutes a violation of his privacy rights under article I, section 7 of the Washington State Constitution. We agree and reverse both the Court of Appeals decision and Jorden's conviction.

I

Facts and Procedural History
¶ 2 The Pierce County Sheriff's Department takes part in the "Lakewood Crime-Free Hotel Motel Program." 1 Verbatim Report of Proceedings (VRP) at 11. The program offers assistance to motels and hotels that have a history of significant criminal activity, providing training on methods of crime reduction. The program also encourages officers to review the guest registries of hotels and motels on a random basis and without individualized or particularized suspicion.[1] *895 Officers often conduct random criminal checks of the names in guest registries at motels with reputations for frequent criminal activity. When checking into a participating motel, guests are advised that a valid identification is required for check-in and that the identification information is kept on file, but the guests are not told of the possibility for random, suspicionless searches of the registry by law enforcement.
¶ 3 On March 15, 2003, Deputy Reynaldo Punzalan conducted a random check of the guest registry at the Golden Lion. Punzalan testified that he visited the motel that day as part of a routine check of the motel. He also testified that because of the motel's high volume of criminal incidents, it was not unusual for officers to visit the Golden Lion once per shift of their own accord. When Punzalan ran the name of guest Timothy Jorden through the mobile data computer in his vehicle, he found there were outstanding felony warrants for Jorden. Punzalan called for backup and confirmed Jorden's room number using motel records. When backup arrived, Punzalan and his fellow officers knocked at Jorden's door. After a couple of minutes, the door was answered by a female occupant. Deputy Punzalan immediately removed the woman from the doorway and entered the room, whereupon an unclothed Jorden was discovered in the bed. Drug paraphernalia and a tin containing a substance later identified as crack cocaine were on a table nearby. Jorden was arrested and charged with unlawful possession of a controlled substance.
¶ 4 Prior to trial, Jorden moved to suppress evidence of the drugs and drug paraphernalia, arguing it was based on an illegal search. Jorden argued that Deputy Punzalan's search of the motel registry violated Jorden's privacy rights under the state and federal constitutions, though Jorden's argument primarily focused on the federal constitution. After considering federal case law, testimony from Deputy Punzalan on the practices surrounding the random registry checks, and argument from both parties, the trial court denied the motion. Evidence of the drugs and drug paraphernalia was introduced at trial. Jorden was convicted and sentenced to 22 months in prison for unlawful possession of a controlled substance.
¶ 5 Jorden appealed, arguing that although the random registry check does not violate federal constitutional protections, it does violate state constitutional protections. The Court of Appeals concluded that the act of checking into a motel and the information required to do sothe same information found on a driver's licensedoes not constitute a private affair protected by article I, section 7. State v. Jorden, 126 Wash.App. 70, 74, 107 P.3d 130 (2005). Jorden filed a petition for review, which we granted.[2]

II

Analysis
¶ 6 Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." "[I]t is well established that article I, section 7 qualitatively differs from the Fourth Amendment and in some areas provides greater protections than does the federal constitution." State v. Surge, ___ Wash.2d ___, at ___, 156 P.3d 208 (2007). *896 We must therefore determine "whether article I, section 7 affords enhanced protection in the particular context." Id. Accordingly, we must determine whether that heightened protection is available in these circumstances to Jorden.
¶ 7 Article I, section 7 protects against warrantless searches of a citizen's private affairs. Therefore, a warrantless search is per se unreasonable unless it falls under one of Washington's recognized exceptions. State v. Hendrickson, 129 Wash.2d 61, 70-71, 917 P.2d 563 (1996). Here, the State does not argue the motel registry review falls into one of the exceptions, but argues that the information in the registry is not a private affair and thus there was no search triggering article I, section 7 protection.
¶ 8 Private affairs are those "`interests which citizens of this state have held, and should be entitled to hold, safe from government trespass.'" In re Pers. Restraint of Maxfield, 133 Wash.2d 332, 339, 945 P.2d 196 (1997) (plurality opinion) (quoting State v. Myrick, 102 Wash.2d 506, 511, 688 P.2d 151 (1984)). In determining whether a certain interest is a private affair deserving article I, section 7 protection, a central consideration is the nature of the information soughtthat is, whether the information obtained via the governmental trespass reveals intimate or discrete details of a person's life. See State v. Jackson, 150 Wash.2d 251, 262, 76 P.3d 217 (2003); State v. McKinney, 148 Wash.2d 20, 29, 60 P.3d 46 (2002); Maxfield, 133 Wash.2d at 341, 354, 945 P.2d 196;[3]State v. Young, 123 Wash.2d 173, 183-84, 867 P.2d 593 (1994); State v. Boland, 115 Wash.2d 571, 578, 800 P.2d 1112 (1990).
¶ 9 In addition, this court has also considered whether there are historical protections afforded to the perceived interest. McKinney, 148 Wash.2d at 27, 60 P.3d 46. And, where the perceived interest involves the gathering of personal information by the government, this court has also considered the purpose for which the information sought is kept, and by whom it is kept. Id. at 32, 60 P.3d 46.
¶ 10 Finally, this court has consistently expressed displeasure with random and suspicionless searches, reasoning that they amount to nothing more than an impermissible fishing expedition. See Maxfield, 133 Wash.2d at 341, 945 P.2d 196; Jackson, 150 Wash.2d at 267, 76 P.3d 217; Young, 123 Wash.2d at 186-87, 867 P.2d 593 (expressing concern over an investigatory technique that "eviscerate[d] the traditional requirement that police identify a particular suspect prior to initiating a search"); City of Seattle v. Mesiani, 110 Wash.2d 454, 455 n. 1, 755 P.2d 775 (1988) (program involving random sobriety checkpoints invalidated under article I, section 7 because it lacked particularized and individualized suspicion).
¶ 11 Setting aside for a moment the question of the nature of the information sought, i.e., whether motel guest registries reveal intimate details about one's life, we first evaluate the historical protections surrounding motel registries and the purpose for which such information is gathered. Although individuals have a privacy interest in their motel rooms, Stoner v. California, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), historical data does not suggest whether Washington's citizens have held, or should be entitled to hold, motel guest registries safe from suspicionless government trespass. The State offers common law authority that includes the use of guest registries in relation to the prosecution of a criminal suspect. Br. of Resp't at 8. But in each of the cases cited, law enforcement had a particularized and individualized suspicion about the suspect that preceded review of the registry. See, e.g., State v. Gunwall, 106 Wash.2d 54, 56, 720 P.2d 808 (1986) (police reviewed hotel register to confirm aspects of informant's tip *897 about suspected cocaine dealer); State v. Tharp, 96 Wash.2d 591, 593, 637 P.2d 961 (1981) (prosecution entered motel registration slip into evidence to show defendant registered with stolen car at motel); State v. Tweedy, 165 Wash. 281, 283, 5 P.2d 335 (1931) (guest register entered into evidence to show defendant charged with giving intoxicating liquor to minors invited into his hotel room).[4] Here, there was no particularized and individualized suspicion of Jorden preceding review of the registry. Thus, an historical inquiry does not resolve this question.
¶ 12 As to the purpose for which such information is kept, and by whom, RCW 19.48.020 requires hotels and motels to keep record of a guest's arrival and departure for one year. RCW 19.48.020 is found within a title that sets forth various miscellaneous business regulations and within a chapter regulating lodging houses and restaurants. There is no indication that RCW 19.48.020 was intended to require lodging records for law enforcement purposes. See McKinney, 148 Wash.2d at 27-29, 32, 60 P.3d 46 (citizens are not entitled to expect Department of Licensing (DOL) records are private and protected from disclosure because the records are gathered by a government agency for law enforcement purposes, and several Washington statutes attest to this fact). Moreover, the motel records are not compiled by a government agency. See id. Thus, state law does not resolve the question.[5]
¶ 13 Our most important inquiry then becomes whether a random and suspicionless search of a guest registry reveals intimate details of one's life. We first consider that here there is more information at stake than simply a guest's registration information: an individual's very presence in a motel or hotel may in itself be a sensitive piece of information. There are a variety of lawful reasons why an individual may not wish to reveal his or her presence at a motel. As the amicus American Civil Liberties Union (ACLU) points out, couples engaging in extramarital affairs may not wish to share their presence at the hotel with others, just as a closeted same-sex couple forced to meet at the motel also would not. Br. of ACLU at 11. The desire for privacy may extend to business people engaged in confidential negotiations, id., or celebrities seeking respite from life in the public eye. One could also imagine a scenario, as Jorden's trial attorney pointed out during the motion to suppress, where a domestic violence victim flees to a hotel in hopes of remaining hidden from an abuser. 1 VRP at 24.
¶ 14 Additionally, we note the sensitivity of the registry information in and of itself. Not only does it reveal one's presence at the motel, it may also reveal co-guests in the room, divulging yet another person's personal or business associates. See McKinney, 148 Wash.2d at 30, 60 P.3d 46. Thus, it appears that the information gleaned from random, suspicionless searches of a guest registry may indeed provide "intimate details about a person's activities and associations." McKinney, 148 Wash.2d at 30 n. 2, 60 P.3d 46 (holding that DOL records do not reveal such details).[6]
*898 ¶ 15 Therefore, the information contained in a motel registryincluding one's whereabouts at the motelis a private affair under our state constitution, and a government trespass into such information is a search. We hesitate to allow a search of a citizen's private affairs where the government cannot express at least an individualized or particularized suspicion about the search subject or present a valid exception to a warrantless search. A random, suspicionless search is a fishing expedition, and we have indicated displeasure with such practices on many occasions.
[A] major cause for suspecting the present petitioner of criminal conduct lay in the fact that petitioner was located in what the police described as a high crime area. It is beyond dispute that many members of our society live, work, and spend their waking hours in high crime areas, a description that can be applied to parts of many of our cities. That does not automatically make those individuals proper subjects for criminal investigation.
State v. Larson, 93 Wash.2d 638, 645, 611 P.2d 771 (1980); see also Maxfield, 133 Wash.2d at 341, 945 P.2d 196; Jackson, 150 Wash.2d at 267; Young, 123 Wash.2d at 186-87, 867 P.2d 593; Mesiani, 110 Wash.2d at 455 n. 1, 755 P.2d 775. Consequently, we hold that the practice of checking the names in a motel registry for outstanding warrants without individualized or particularized suspicion violated the defendant's article I, section 7 rights.
¶ 16 We are not insensitive to the difficulties facing law enforcement in ensuring our motels and hotels remain relatively crime-free, but as a practical matter our holding does not unduly restrict the investigative powers of the police. Random, suspicionless registry checks are but one part of the Lakewood Crime-Free Hotel Motel Program. Law enforcement may continue to randomly run checks of the license plates of cars parked at the motels, provide training to motel owners, and encourage motel owners to be watchful of behavior evincing criminal activity. Reports of such observations may engender the requisite individualized suspicion that is notably missing from current program techniques.

III

Conclusion
¶ 17 Information contained in a motel registry constitutes a private affair under article I, section 7 of the Washington State Constitution because it reveals sensitive, discrete, and private information about the motel's guest. Absent a valid exception to the prohibition against warrantless searches, random viewing of a motel registry violates article I, section 7 of the Washington State Constitution. The evidence obtained from the registry of the Golden Lion Motel, which led officers to Jorden's room, was obtained through unlawful means and should have been excluded. Accordingly, we reverse the Court of Appeals.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justice TOM CHAMBERS, Justice SUSAN OWENS, Justice MARY E. FAIRHURST and Justice RICHARD B. SANDERS.
J.M. JOHNSON, J. (concurring).
¶ 18 I concur with the majority, but write to further explain that a similar program could be easily implemented which would be valid. A hotel owner may constitutionally require that prospective patrons consent at registration to a fully disclosed waiver of their claim to registry privacy as a condition of renting a room. This may be done as part of a cooperative program with police, which will serve to protect all guests. After disclosure of the owner's agreement to make the registry available to the police, any patron may refuse to register. He would then be welcome to find other accommodations. This approach recognizes the interests of hotel owners, other guests, and of law enforcement, while protecting each patron's recognized privacy right to be free of a random suspicionless search. Since there was no *899 such full disclosure of the program here, I concur.

Analysis
¶ 19 Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." The majority has correctly analyzed why a random suspicionless search of registry records in this case should be treated as an invasion of private affairs. However, the majority did not adequately analyze the disclosure element as currently provided by the Lakewood Crime-Free Hotel Motel Program (Crime Free Program)[1] and alternatives that would easily satisfy the important constitutional concerns, which I share.
¶ 20 A Crime Free Program is not per se unconstitutional, although here inadequate disclosure regarding the program made the revealing of guests' identification to police impermissible. It is true that every patron has the right to be free from warrantless searches, which are "unreasonable per se." State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996). Consent, however, is one of the many narrow exceptions to the search warrant requirement. The State bears the burden of establishing exception and did not do so here. Id. at 71, 917 P.2d 563. However, a patron may consent to waive this constitutional right if the consent is knowing and voluntary. Id.
¶ 21 Here, there was no knowing and voluntary consent. Thus, I disagree with the dissent's contention that guests at the Golden Lion Motel "were on notice that their registry information might be relevant to crime prevention efforts." Dissent at 902. It is true that the rules of the program were posted. The posting noted only that all guests "must be registered with the front desk" and "must provide a valid picture [identification]." Pl.'s Ex. 1. The notice did not tell prospective guests that their identification would be provided to police. However, the dissent strains mightily to reconcile the innocuous posting provisions to conclude that registering for a room "voluntarily exposes the information and surrenders any right [of the individual] to claim it is protected under article I, section 7." Dissent at 903. As posted, the Crime Free Program posters are too vague to accomplish the necessary knowing waiver. They do not put the prospective patron on notice that their records are available to be searched at the whim of law enforcement. However, if such notice were provided, waiver could be found.
¶ 22 The facts are in contrast with our decision in State v. McKinney, 148 Wash.2d 20, 60 P.3d 46 (2002). In that case, the persons voluntarily provided information to the Department of Licensing in order to be licensed to operate a vehicle on our roads. Id. at 31, 60 P.3d 46. We concluded that it is understood that law enforcement has access to such driver's license records.[2]See id. at 30, 60 P.3d 46. This generally understood *900 access to licensing records is very different from the perceived privacy at the records of a hotel registry. When a guest hands over a picture identification to the front desk clerk, it is unreasonable to conclude that he or she hands over his or her constitutionally protected privacy rights, especially where there is no explicit notice of the availability to police of such records.
¶ 23 It must be recognized, however, the Crime Free Program is beneficial to motel owners because it offers a structure through which they cooperate with law enforcement and assure better security for all their motel guests. See Br. of Resp't at 9. Motel owners voluntarily joined the Crime Free Program in order to reduce the proliferation of drugs, prostitution, and crime that threaten to destroy their businesses and imperil other innocent guests. Id.
¶ 24 The constitutional rights of all patrons and the property rights of motel owners can be harmonized through use of proper disclosure resulting in knowing, voluntary consent. The disclosure should accurately disclose the basic operation of the Crime Free Program (e.g., "your registration records will be available for review by law enforcement personnel"). If patrons do not consent, they are free to take their business to a less concerned proprietor at the local "no-tell" motel. Such an approach is not inherently coercive due to the ubiquitous nature of lodging options.[3]
¶ 25 The dissent cites several historical precedents in this court; cases in which guest registry evidence had been admitted without any claim that a privacy interest had been invaded. Dissent at 901-902. This history is certainly relevant, and we recognize that the original meaning of constitutional concepts may inform our understanding and interpretation. Nevertheless, when both sides of the argument have strong merit, the scales must tip in favor of the constitutionally protected individual right.
¶ 26 In this case, a simple disclosure would give patrons notice that their registration information will be subject to law enforcement review. This knowing and voluntary waiver of a patron's protected private affairs is required to cure the article I, section 7 constitutional defect and allow owners and law enforcement to continue the program.

Conclusion
¶ 27 I concur with the majority that hotel registration records, including individual identities, are protected under article I, section 7. However, there is also an important interest in deterring crime, and hotel owners have a legitimate interest in reducing criminal acts committed on their property and assuring guests that the premises are safe. Proper disclosure, and the knowing and voluntary consent of patrons, would cure any constitutional defect in the Crime Free Program.
MADSEN, J. (dissenting).
¶ 28 Using flawed justification, the majority removes a valuable law enforcement tool employed in Pierce County to protect public safetythe Lakewood "Crime Free Multi-Housing Motel Program." 1 Verbatim Report of Proceedings at 14. To reach its result, the majority unfortunately confuses standards for invasion of a protected privacy interest with principles for determining whether there is a protected interest in the first place. It also refuses to give due weight to the "Crime Free Hotel/Motel Guest Rules" that the motel posted. Guests were advised by these rules of the connection between their registry information and crime prevention efforts of the Lakewood Police. Along with other mistakes in the majority's approach to determining whether an individual has a protected privacy interest under article I, section 7 of the Washington Constitution, these errors lead the majority to the erroneous conclusion that information obtained from a *901 motel registry was obtained in violation of this constitutional provision.
¶ 29 I would hold that defendant Timothy Jorden did not have a privacy interest in information in the guest registry. Therefore, law enforcement officers did not unconstitutionally use the information to determine that Jorden had outstanding arrest warrants leading to evidence of drugs and drug paraphernalia.

ANALYSIS
¶ 30 Article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Article I, section 7 is qualitatively different from the fourth amendment to the United States Constitution, and in some contexts may provide more protection than the Fourth Amendment. State v. McKinney, 148 Wash.2d 20, 29, 60 P.3d 46 (2002). After decades of reviewing cases where a violation of article I, section 7 has been claimed, it is now well-established that a Gunwall[1] analysis is no longer necessary to determine whether it is appropriate for this court to engage in an independent state constitutional analysis when addressing a claimed violation of article I, section 7. See, e.g., State v. Jackson, 150 Wash.2d 251, 259, 76 P.3d 217 (2003) (search and seizure context); McKinney, 148 Wash.2d at 26, 60 P.3d 46 (same); Andersen v. King County, 158 Wash.2d 1, 44, 89, 138 P.3d 963 (2006) (lead and concurring opinions constituting a majority of the court; claimed privacy interest outside the search and seizure context). Rather, the question is whether, under an independent state constitutional analysis, there has been a violation of article I, section 7. Andersen, 158 Wash.2d at 44, 138 P.3d 963; McKinney, 148 Wash.2d at 26-27, 60 P.3d 46.
¶ 31 Contrary to the majority's conclusion, there has been no intrusion into Mr. Jorden's private affairs. "Private affairs" are "`those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.'" State v. Young, 123 Wash.2d 173, 181, 867 P.2d 593 (1994) (quoting State v. Myrick, 102 Wash.2d 506, 510-11, 688 P.2d 151 (1984)).
¶ 32 To decide if an interest is one that citizens of the State "have held," we look to the protection historically accorded the interest. See, e.g., McKinney, 148 Wash.2d at 27, 60 P.3d 46; City of Seattle v. Mesiani, 110 Wash.2d 454, 456-57, 755 P.2d 775 (1988). The State cites a number of cases where information from a hotel or motel guest registry has been used as evidence in a case without infringing a protected privacy interest. The majority dismisses these cases on the ground that "in each," the State had a "particularized and individualized suspicion about the suspect that preceded review of the registry." Majority at 897 (emphasis omitted). The majority reasons that because there was no particularized and individualized suspicion of Jorden prior to review of the registry, the historical inquiry does not resolve the question whether there is a privacy interest in hotel and motel guest registries.
¶ 33 Unfortunately, the majority confuses the question whether a privacy interest exists with the question whether any intrusion into a recognized privacy interest was with "authority of law." Const. art. I, § 7. Mesiani illustrates the distinction. There, the court acknowledged the historical recognition by this court of "the privacy interest of individuals and objects in automobiles." Mesiani, 110 Wash.2d at 456-57, 755 P.2d 775. The court also noted that the prosecution failed to show that random warrantless checkpoint searches of automobiles fell within any exception to the warrant requirement and thus failed to prove that the invasion of this privacy interest was with authority of law. Id.
¶ 34 Once this confusion is set aside, it is apparent that the cases cited by the State favor the conclusion that historically no protection was provided the information in hotel and motel guest registries. In addition to the cases cited by the majority, the State cites State v. Long, 65 Wash.2d 303, 396 P.2d 990 (1964); State v. Scott, 20 Wash.2d 696, 149 P.2d 152 (1944); State v. Biggs, 57 Wash. 514, 107 P. 374 (1910); and State v. Douette, *902 31 Wash. 6, 71 P. 556 (1903). In each of these cases guest registry evidence was admitted without any claim that a privacy interest had been invaded. The case law provided by the State strongly suggests, albeit not conclusively, that historically there was no protection accorded the information in hotel and motel guest registries.
¶ 35 The State also points out that at least since 1915 statutory law has provided that "[e]very hotel . . . shall keep a record of the arrival and departure of its guests in such a manner that the record will be a permanent one for at least one year from the date of departure." RCW 19.48.020. Nothing in this statute or related law states that the information that is required to be maintained must be kept private by the hotel keeping the records.[2] But again, although not directly saying so, this statute, like the cases cited by the State, suggests that historically no protection was accorded the information in a guest registry.
¶ 36 Turning to the question whether individuals are entitled to hold a privacy interest in information set down in a hotel or motel guest registry, safe from government trespass without a warrant, this court has identified additional factors that help focus this inquiry. The "nature and extent of information obtained by the police, for example, information concerning a person's associations, contacts, finances, or activities, is relevant in deciding whether an expectation of privacy an individual has is one which a citizen of this state should be entitled to hold." Jackson, 150 Wash.2d at 260, 76 P.3d 217. The key is whether the subject matter of the claimed privacy interest would provide discrete information about the individual's activities, intimate details of his or her life, the identity of friends or political and business associates, and the like. McKinney, 148 Wash.2d at 29-30, 60 P.3d 46.
¶ 37 The majority proposes that the individual's very presence in the hotel may be a sensitive piece of information, reciting a number of reasons why individuals may be staying at the hotel or motel (such as an extramarital affair). The majority also proposes that the presence of a co-guest could be disclosed (assuming the particular hotel or motel requires registration by name of all persons staying in a room, a questionable assumption). The co-guest may have similarly sensitive reasons for his or her presence at the hotel or motel.
¶ 38 The difficulty with this reasoning is that the sensitive information mentioned by the majority is not disclosed by information in the guest registry. There must be some other source of this information. And, to the extent that an individual's presence alone may be sensitive, the individual himself or herself is likely to expose his or her presence voluntarily through physical comings and goings, to and from the hotel or motel.
¶ 39 In the end, the majority's discussion largely centers on the reasons one might stay at a hotel or motel  information that a guest registry does not disclose. This case is very much like McKinney, where the information available from the Department of Licensing, i.e., the names and addresses of registered vehicle owners and license status, was not the type of personal information implicating the right to privacy.
¶ 40 Also relevant to the nature and extent of information obtained by the police is the extent to which the subject matter is voluntarily exposed to the public. McKinney, 148 Wash.2d at 29, 60 P.3d 46. The evidence in this case strongly suggests that guests at the Golden Lion Motel were on notice that their registry information might be relevant to crime prevention efforts. The rules that were posted were titled "Crime Free Hotel/Motel Guest Rules" and contained at the top a symbol containing the words "Lakewood Police" and "Pierce County Sheriff." Pl.'s Ex. 1. These rules told the guests that they "must be registered with the front desk," and "provide a valid picture [identification]." Id.
¶ 41 A person registering at the motel would reasonably conclude that the registry information might be used by law enforcement *903 personnel in connection with crime prevention or protection of guests. By providing registration information which the individual knows may be relevant to crime prevention or protection, the individual voluntarily exposes the information and surrenders any right to claim it is protected under article I, section 7.
¶ 42 In this respect, this case is in sharp contrast to Jackson, where we held that citizens of this state have a right to be free from governmental placement of a global positioning system (GPS) device on the citizen's vehicle. We rejected the argument that the GPS device merely augmented the senses of police officers and disclosed information that the suspect already exposed to public view. We concluded that when a GPS device is attached to a person's vehicle, there is a massive intrusion into private affairs because it enables uninterrupted 24-hour-a-day surveillance of the driver  surveillance that cannot be sustained by following the suspect. Absolutely every trip taken by the individual would be monitored, yielding an enormous amount of information about associations, preferences (religious and political, for example), alignments, and personal ails and foibles. Jackson, 150 Wash.2d at 262, 76 P.3d 217. We held that a GPS device may not be affixed to someone's vehicle without a warrant.
¶ 43 Here, in contrast, the guest registry discloses nothing about a person's life, interests, associations, and preferences. Unlike Jackson, where the surveillance itself disclosed the information we found protected under article I, section 7, here much of the "sensitive" information the majority mistakenly believes might be learned from a guest registry is in fact acquired through some other source.
¶ 44 I would uphold the Court of Appeals' decision and affirm Mr. Jorden's convictions.
I CONCUR: Justice CHARLES W. JOHNSON.
NOTES
[1] The program is voluntary in so far as motels will not receive crime prevention training if they are not enrolled in the program. But because the Ninth Circuit allows random registry checks under United States v. Cormier, 220 F.3d 1103, 1108 (9th Cir.2000), testimony at trial indicated that an officer may review a hotel's registry without the hotel's consent. Thus, while participation in certain aspects of the crime-prevention program is voluntary, the practice of random registry checks may occur whether or not a motel invites such a search. While the Golden Lion welcomes the random checks, the practice gives rise to the concern voiced by amicus Pacific Hospitality Investment, Inc., a hotel group, that unwanted random checks discourage the business of lawful patrons at motels, interfere with business operations, and compromise the "duty and responsibility of a hotel operator to protect its guests against privacy violations." Mem. of Amici Curiae in Support of Pet. for Review at 1.
[2] Acting as amici curiae, the American Civil Liberties Union and Pacific Hospitality Investment, Inc., owner of two hotels in Fife, Washington, filed a memorandum in support of the petition for review, arguing that the random registry check violates article I, section 7.
[3] A majority of the Maxfield court failed to agree that a review of power records constituted an impermissible intrusion into one's private affairs. But a majority did consider the extent to which such records reveal details about an individual's life. The plurality noted that electrical consumption "pervad[es] every aspect of an individual's business and personal life," Maxfield, 133 Wash.2d at 341, 945 P.2d 196, while the dissent believed that such records do not disclose "discrete information about an individual's activities." Id. at 354, 945 P.2d 196 (Guy, J., dissenting).
[4] Moreover, of the cases cited by the State, only Gunwall concerned an article I, section 7 question, and there the use of a hotel register was not at all related to the privacy question. 106 Wash.2d at 55-57, 720 P.2d 808.
[5] At oral argument, the State referenced municipal codes that allow law enforcement to review motel registries, suggesting the codes evinced Washington citizens have not held such information free from governmental trespass. However, neither party cited the codes in briefing. Amici's memorandum in support of petition for review did cite the codes as evidence supporting the necessity of granting review in this case, but amici did not cite the codes in connection with the argument first put forth by the State during oral argument. Even if amici had made such an argument, we are not bound to consider argument raised only by amici. Port of Seattle v. Pollution Control Hearings Bd., 151 Wash.2d 568, 629 n. 30, 90 P.3d 659 (2004).
[6] In McKinney, we upheld random checks by law enforcement of plainly visible vehicle license plates. But there, numerous statutes revealed that DOL records are kept for law enforcement purposes, indicating that Washington citizens have not held such records to be free from government trespass. McKinney, 148 Wash.2d at 27-28, 60 P.3d 46. In addition, we explained that the information contained in a driver's license record merely reveals one's name, address, and limited physical characteristics, and therefore does not reveal intimate and discrete details about one's life. Id. at 30, 60 P.3d 46. We concluded that no search had occurred under article I, section 7. Thus, McKinney is clearly distinguishable from this case.
[1] The Crime Free Program rules, which were posted in the Golden Lion Motel, state the following:

Welcome. As a guest of our facility we ask that you read, understand and follow our rules during your stay. These rules help us to make your stay safe and enjoyable. If you have any questions about these rules, please ask a member of our staff. Enjoy your stay.
 All adult guests must be registered with the front desk. To register guests must provide a valid picture [identification]. They must also register the make and license number of their vehicle.
 Quiet hours are from 9:00 PM to 6:00 AM.
 The volume of visitors and telephone calls will be limited to a reasonable number.
 Only registered guest or visitors who are cleared through the night manager will be allowed on the premises during quiet hours.
 Visitors who remain after 9:00 PM will be required to provide a valid picture ID, be logged in by the night manager and must also register their vehicles with the front desk.
 All visitors must depart by 12:00 AM.
 Motel staff will check each room for room serviceability daily.
 No hazardous or illicit materials or criminal activity are allowed anywhere on the premises.
Failure to follow these and any other posted rules will result in termination of your room rental. Thank you for your understanding.
Pl.'s Ex. 1.
[2] "The driving public is well aware that vehicle and driver licensing procedures require disclosure of such information, and it is unlikely that a citizen would expect this information is not available for law enforcement purposes." McKinney, 148 Wash.2d at 30, 60 P.3d 46.
[3] This method does not raise the same coercion concerns found in, for example, "knock and talk" warrantless searches. See State v. Ferrier, 136 Wash.2d 103, 115, 960 P.2d 927 (1998). There is a fundamental difference between requesting consent to search a home and requesting consent to access hotel records. Specifically, when police obtain consent to search a home pursuant to a "knock and talk" they go through private belongings and affairs without restriction. State v. Khounvichai, 149 Wash.2d 557, 564, 69 P.3d 862 (2003).
[1] State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).
[2] Dennis M. McLaughlin, Washington State Hospitality Law Manual 77 (1993), discusses RCW 19.48.020 and advises innkeepers that "[a]s a general rule, the register of a hotel is always open for inspection by appropriate local law enforcement officials."