# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56051-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ALAN MERTON LADD, | |
| Appellant. | |

CRUSER, A.C.J. — Alan Ladd was subject to a no-contact order preventing him from contacting his daughter, AL, who lived in foster care. AL's foster parent found text messages between Ladd and AL on AL's phone, and subsequently turned the phone over to police. The Clallam County Police Department then obtained a warrant to search AL's phone. Based in part on the evidence obtained from that search, Ladd was found guilty of two counts of violating a no-contact order.

Ladd now appeals his conviction, arguing for the first time on appeal that the warrant authorizing the search of AL's phone was unconstitutionally overbroad. Ladd also argues he received ineffective assistance of counsel because his attorney failed to move to suppress the evidence on the grounds that the warrant was unconstitutionally overbroad. We decline to reach the merits of Ladd's warrant challenge, and hold that he did not receive ineffective assistance of counsel, because Ladd lacks standing to challenge the warrant. Accordingly, we affirm Ladd's conviction.

FACTS

Alan Ladd has a teenage daughter, AL, who at all times relevant to this appeal resided with a foster parent, Emma Bankson. In 2019, a domestic violence no-contact order was issued to prevent Ladd from contacting AL. Bankson, believing AL was in contact with Ladd, searched AL's phone and saw texts between the two. Bankson gave AL's phone and passcode to tribal police, who then passed off the phone to the Clallam County Sheriff's Office.

Deputy Morris of the Clallam County Sheriff's Office applied for and obtained a search warrant to extract information from AL's phone. Based on the information obtained pursuant to the warrant, Ladd was arrested and charged with four counts of violating a no-contact order under RCW 26.50.110(1)(a)(ii) and (5). Counts 1 and 2 stemmed from Facebook messages sent on September 24, 2020 and December 30, 2020, and counts 3 and 4 stemmed from text messages sent on February 8, 2021 and February 10, 2021. Ladd did not challenge this warrant below or seek suppression of any evidence obtained as a result of the warrant.

Ladd's case was heard by a jury in July 2021. Ladd objected to the admission of the data extraction report on hearsay grounds. Ruling on that motion, the court admitted the report in part. The jury returned a verdict of not guilty on counts 1 and 2, and a verdict of guilty on counts 3 and 4. Ladd was sentenced to 33 months.

Ladd now appeals, arguing that the warrant authorizing the search of AL's phone was unconstitutionally overbroad. Ladd also argues he received ineffective assistance of counsel.

ANALYSIS

I. STANDING

A. LEGAL PRINCIPLES

Both the United States and Washington constitutions provide a right to be free from unlawful searches. CONST. art. I, § 7; U.S. CONST. amends. IV; XIV. Violation of one's privacy under the Washington constitution "turns on whether the State has unreasonably intruded into a person's private affairs" whereas the Fourth Amendment inquiry turns on whether the State "intrudes upon a subjective and reasonable expectation of privacy." *State v. Goucher*, 124 Wn.2d 778, 782, 881 P.2d 210 (1994) (internal quotation marks omitted).

Under the Washington constitution, the relevant[1] standing analysis asks "whether a private affair has been disturbed." *State v. Bowman*, 198 Wn.2d 609, 621, 498 P.3d 478 (2021). Because both constitutional analyses ask whether a private affair has been disturbed, "the relevant 'standing analysis basically duplicates the substantive article I, section 7 analysis.'" *Id.* at 621 (quoting *State v. Hinton*, 179 Wn.2d 862, 869 n.2, 319 P.3d 9 (2014)).

One's "private affairs" are "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass." *State v. Athan*, 160 Wn.2d 354, 366, 158 P.3d 27 (2007) (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984)). "In determining whether something is a private affair . . . we consider both 'the nature and extent of the information which may be obtained as a result of the governmental conduct' and the historical

---

[1] Because there is no possession crime at issue, the automatic standing doctrine is not relevant. *See State v. Evans*, 159 Wn.2d 402, 407, 150 P.3d 105 (2007).

protection afforded to the interest asserted." *State v. Samalia*, 186 Wn.2d 262, 269-70, 375 P.3d 1082 (2016) (quoting *State v. Miles*, 160 Wn.2d 236, 244, 156 P.3d 864 (2007)).

Whether one has control over the area from which information is accessed is not dispositive. For example, even though motel guests have no control or possessory interest in the motel's registry, they retain a privacy interest in a motel registry that can be invaded by an officer's search of the registry without particularized suspicion. *State v. Jorden*, 160 Wn.2d 121, 129, 156 P.3d 893 (2007). This is by virtue of the "intimate details of one's life" that may be revealed through such a search. *Jorden*, 160 Wn.2d at 129. Similarly, banking records are protected because they "may disclose what the citizen buys [and] what political, recreational, and religious organizations a citizen supports." *State v. Miles*, 160 Wn.2d 236, 246, 156 P.3d 864 (2007).

After a detailed analysis of the above factors, our supreme court held in 2016 that one's own cell phone is a private affair within the meaning of article I, section 7. *Samalia*, 186 Wn.2d at 269, 272. And in at least some instances,[2] our supreme court has held that a person retains a privacy interest in their outgoing text messages. *See Hinton*, 179 Wn.2d at 873. However, that privacy interest is subject to common sense limitations and does not extend to messages reached by police during a lawful search of another's phone. *See Bowman*, 198 Wn.2d at 621-22.

The supreme court in 2014 decided *State v. Hinton*, which established the limited privacy interest in outgoing text messages. 179 Wn.2d 862. A brief review of the facts in *Hinton* is

---

[2] Unfortunately, the supreme court has not clarified the exact contours of this privacy interest. Indeed, Justice Johnson's dissent in *Hinton* (joined by Justices Owens, Wiggins, and Madsen) criticized the majority for "gloss[ing] over the standing doctrine, effectively extending privacy protection to those other than the owner of the cell phone, far beyond article I, section 7's intended scope." *Hinton*, 179 Wn.2d at 885-86 (J.M. Johnson, J., dissenting).

warranted here. In *Hinton*, Daniel Lee was arrested by the police and his phone was seized. *Hinton*, 179 Wn.2d at 865. While Lee was in a holding cell, a detective opened his phone and read text messages that were coming into the phone without Lee's knowledge, consent, or the authority of a warrant. *Id.* at 866. One of the text messages that arrived on Lee's phone was from Jonathan Roden, and the detective, posing as Lee, responded to this message and arranged a drug transaction. *Id.* When Roden arrived at the transaction, he was arrested. *Id.* Yet again, the detective read text messages arriving on Lee's phone, one of which was from Hinton. *Id.* Again, posing as Lee, the detective replied to the text message intended for Lee and arranged a drug transaction with Hinton. *Id.* When Hinton arrived at the transaction, he was arrested, and was later convicted of attempted possession of heroin. *Id.*

The supreme court reversed Hinton's conviction because police officers invaded his privacy rights by posing as Lee and texting Hinton from Lee's phone to arrange a drug deal. *Id.* The majority determined that Hinton had standing because he retained a privacy interest in the text messages he sent that were delivered to Lee's phone but never received by Lee. *Id.* at 869, n.2, 873.

However, the *Hinton* court acknowledged common sense limits on such a privacy interest. For example, it emphasized that "Hinton certainly assumed the risk that Lee would betray him to the police," but that assumption of the risk was not dispositive because "Lee did not consent to the officer's conduct." *Id.* at 874. And as the concurrence put it, "[t]he sender of a text message assumes a limited risk that the recipient may voluntarily expose that message to a third party, but . . . the sender does not assume the risk that the police will search the phone in a manner that violates the phone owner's rights." *Id.* at 881 (Johnson, J., concurring). In other words, Hinton had

standing to sue precisely because the police acted without Lee's consent and without a warrant. *See Id.* at 869, n.2, 882.

Furthermore, *Hinton* was recently examined by the supreme court in *Bowman*, a case where law enforcement again engaged a suspect in a text message exchange impersonating a known associate. *Bowman*, 198 Wn.2d at 620. The facts were nearly identical to *Hinton*, but this time, the police obtained the associate's consent before impersonating him via text message. *Id.* The *Bowman* court reaffirmed that "*Hinton* established a privacy interest in text message conversations with known contacts." *Id.* at 620 (internal quotation omitted). However, it emphasized that "[t]he scope of the privacy right established in *Hinton* was necessarily tied to the illegal search or 'disturbance' of the third party's phone without a warrant or consent." *Id.* at 621-22 (quoting *Hinton*, 179 Wn.2d at 869 n.2). On that basis, it held that *Hinton* did not apply where "no such illegal search occurred," and that the challenged conduct did not implicate a private affair. *Bowman*, 198 Wn.2d at 622, 624.[3]

B. APPLICATION

Ladd asserts that he has standing to challenge the warrant authorizing the search of AL's cell phone because he retained a privacy interest in the texts stored on her phone. He contends that *Hinton* confers on him the requisite standing to challenge the particularity of the warrant authorizing police to search AL's phone. The State fails to respond to that argument.

---

[3] Justice Yu noted in concurrence that there was no dispute about the validity of Bowman's associate's consent. *Bowman*, 198 Wn.2d at 639-40 (Yu, J., concurring). She went on to state that if the police had "violated [the associate's] privacy rights in *some other* relevant way[,] . . . it is likely that Bowman would also have standing to raise the issue here." *Id.* at 640.

Here, Ladd's invocation of *Hinton* is misguided. Like in *Bowman*, no illegal search of AL's phone occurred: AL voluntarily gave her phone to her foster mother, who then voluntarily gave the phone to law enforcement, who then obtained a warrant. Thus, like in *Bowman*, the search here did not intrude on Ladd's private affairs. A determination that Ladd has standing to challenge the warrant and consent-based search of AL's phone would unjustifiably expand *Hinton*'s holding beyond its limited context. We hold that Ladd does not have standing to challenge the search of AL's phone.

## I. RAP 2.5(a)

We further hold that even if Ladd did have standing to challenge the warrant, review of this claim is not warranted under RAP 2.5(a). As we note above, Ladd did not challenge the warrant below. Thus, in order to obtain review of this claim, Ladd must show that he suffered a manifest error affecting a constitutional right. RAP 2.5(a)(3). Assuming a claimed error is of constitutional magnitude, the appellant must further show the error is "manifest" by demonstrating actual prejudice resulting from the error. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). To demonstrate actual prejudice, "[t]he defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights. . . ." *State v. McFarland*, 127 Wn. 2d 322, 333, 899 P.2d 1251 (1995). In the context of an unpreserved suppression claim, an appellant "must show the trial court likely would have granted the motion if made." *Id.* at 334. This court finds actual prejudice only if the error is "so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 99-100.

Here, Ladd claims that the warrant was unconstitutionally overbroad. A constitutionally valid warrant must be based on probable cause and must contain language "particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV; *see also* CONST. Art. 1, § 7. To be sufficiently particular, "[t]he warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *State v. Perrone*, 119 Wn.2d 538, 546, 834 P.2d 611 (1992). In addition to limiting the executing officer's discretion, the warrant must also "inform the person subject to the search what items the officer may seize." *State v. Riley*, 121 Wn.2d 22, 29, 846 P.2d 1365 (1993). An affidavit, if physically attached and incorporated with suitable words of reference, may cure an overbroad warrant. *Id.* at 29-30.[4] We review the particularity of a warrant de novo, and we interpret warrants "in a commonsense, practical manner, rather than in a hypertechnical sense." *Perrone*, 119 Wn.2d at 549.

---

[4] Division One of this court recently held that a warrant authorizing the search of a cell phone must be "carefully tailored" to the justification of the search and limited to the data for which probable cause exists. *State v. McKee*, 3 Wn. App. 2d 11, 29, 413 P.3d 1049 (2018), rev'd on other grounds, 193 Wn.2d 271, 438 P.3d 528 (2019). In *McKee*, the warrant "authorized the police to search all images, videos, documents, calendars, text messages, data, Internet usage, and 'any other electronic data,' and to conduct a 'physical dump' of 'all of the memory of the phone for examination.'" *Id.* at 29. The court noted that "[t]he detailed allegations in the Affidavit submitted in support of the search warrant could easily meet the particularity requirement," but its analysis was limited to the text of the warrant itself because the affidavit was not attached or incorporated by reference. *Id.* at 28. Because the warrant allowed indiscriminate search and seizure of data "without regard to whether the data [wa]s connected to the crime," it was held to be unconstitutionally overbroad. *Id.* at 29.

Like in *McKee*, the warrant here listed broad categories of data. But unlike in *McKee*, the warrant here incorporated by reference a sworn affidavit informing the executing officer that the target of the search was information tending to show contact between Alan Ladd and his daughter AL. Thus, *McKee* is distinguishable.

As Ladd acknowledges, the search warrant here incorporated an attached affidavit. That affidavit stated that the search was intended to uncover communications between AL and Ladd, who was legally barred from contacting her. Because overbroad warrants can be cured by attaching and incorporating by reference a more detailed affidavit, and because the affidavit here appears to have provided sufficient guidance to law enforcement in executing the search, the affidavit cured the warrant of any overbreadth. *See Riley*, 121 Wn.2d at 29.

Because the warrant was not overbroad, Ladd cannot show that the trial court likely would have granted a motion to suppress on this basis. Thus, even if Ladd had standing, we decline to decide the merits of this claim for the first time on appeal because Ladd fails to show review is warranted.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. LEGAL PRINCIPLES

The right to counsel includes the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail on a claim of ineffective assistance of counsel, a defendant must show "(1) that defense counsel's conduct was deficient . . . and (2) that the deficient performance resulted in prejudice." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). We need not address both prongs of the test when the defendant's showing on one prong is insufficient. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Performance is deficient if it falls below an objective standard of reasonableness based on the record established at trial. *McFarland*, 127 Wn.2d at 334. There is a strong presumption that counsel performed reasonably, but this presumption can be overcome when "'there is no

conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *Reichenbach*, 153 Wn.2d at 130). To establish prejudice, the defendant must show that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Grier*, 171 Wn.2d at 34 (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

B. ANALYSIS

Ladd argues he received ineffective assistance of counsel when his attorney failed to challenge the constitutionality of the warrant. But as we discuss above, Ladd lacked standing to challenge the search of AL's phone, and even if he did have standing, the warrant would have withstood his challenge because it was not unconstitutionally overbroad. Therefore, it cannot be said that there is "no conceivable legitimate tactic" that would explain a failure to move to suppress the fruits of the warrant. *Grier*, 171 Wn.2d at 33. That is, Ladd cannot show that his attorney performed deficiently, and his ineffective assistance of counsel argument fails. Moreover, because there is not a reasonable probability that the motion to suppress would have been granted, Ladd cannot show prejudice from counsel's decision not to challenge the warrant.

CONCLUSION

Ladd lacks standing to challenge the search warrant, and even if he had standing he fails to show that review is warranted under RAP 2.5(a)(3). Ladd does not demonstrate that he received ineffective assistance of counsel. Accordingly, we affirm Ladd's conviction.

No. 56051-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Cruser, A.C.J.

We concur:

Maxa, J.

Lee, J.