256 P.3d 1131 (2011)
171 Wash.2d 370
In the Matter of the Personal Restraint of Glenn Gary NICHOLS, Petitioner.
No. 83742-2.
Supreme Court of Washington, En Banc.
Argued October 26, 2010.
April 28, 2011.
*1132 Lila Jane Silverstein, Washington Appellate Project, Seattle, WA, for Petitioner.
Deborah A. Dwyer, King County Prosecutor's Office, Appellate Unit, Seattle, WA, for Respondent.
ALEXANDER, J.
¶ 1 We granted Glenn Nichols's petition to review a decision of the Court of Appeals denying Nichols's personal restraint petition (PRP) in which he challenged his convictions on charges of possession of cocaine with intent to deliver and possession of marijuana. We reject Nichols's contention that Seattle police officers violated article I, section 7 of our state's constitution when they obtained information from a motel desk clerk, which indicated that Nichols was a registered guest at the motel. We, therefore, affirm the Court of Appeals.

I
¶ 2 On February 26, 2004, a police informant went to the home of Toreka Ativalu intending to make a controlled purchase of cocaine with $50 of prerecorded Seattle Police Department buy money. Ativalu advised the informant that she had no cocaine at the time but was on her way to obtain some from her supplier. The informant and Ativalu, together with another person known only as "Robert," drove to a nearby Travelodge motel in south Seattle. At the motel, Ativalu asked Robert to call "O.G." on his cell phone to determine the motel room O.G. was occupying. After the telephone call was made, the informant observed Ativalu enter room 56 at the Travelodge. Approximately five minutes later, Ativalu returned with cocaine, some of which was provided to the informant. The trio then returned to Ativalu's home.
¶ 3 Shortly thereafter, the informant told detectives of the Seattle Police Department what he had observed at the Travelodge. About two hours later, Seattle police officers went to the front desk of the Travelodge and asked who was registered in room 56. In response, the desk clerk provided the officers with a registration form, which showed that the registrant of room 56 was Glenn Nichols. The desk clerk also presented the officers with a photocopy of Glenn Nichols's driver's license. After looking at the registration form and the driver's license, which contained a photograph of the licensee, the officers obtained information via a computer in the police officers' car that Nichols's driver's license had been suspended. Shortly after obtaining this information, the detectives observed Nichols drive into the motel parking lot. When Nichols exited the car he had been driving, the police officers asked him if he was Glenn Nichols. He responded affirmatively. The officers then placed him under arrest for the offense of driving while license suspended. A search of Nichols's person, incident to his arrest, yielded cocaine, marijuana, and $470 in cash, including "$10 of SPD [Seattle Police Department] buy money." Verbatim Report of Proceedings (Jan. 5, 2005) at 82.
¶ 4 Nichols was charged with possession of cocaine with intent to deliver and possession of less than 40 grams of marijuana. Following a denial of Nichols's motion to suppress the evidence seized incident to his arrest, the matter proceeded to a bench trial at which Nichols was found guilty of both charges. After Nichols was sentenced, he appealed his convictions to the Court of Appeals, Division One. Nichols did not, however, raise an issue relating to the motel registry. Because Nichols did raise a challenge to a court-ordered DNA (deoxyribonucleic acid) sampling, the court stayed his appeal pending this court's decision in State v. Surge, 160 Wash.2d 65, 156 P.3d 208 (2007). While the appeal was stayed, Nichols filed the instant PRP challenging the search of the motel registry. The Court of Appeals stayed consideration of the PRP pending a decision on Nichols's direct appeal. Shortly thereafter, this court issued our opinion in State v. Jorden, 160 Wash.2d 121, 130, 156 P.3d 893 (2007), in which we held that a warrantless, random check of a motel registry violated article I, section 7 of our state's constitution. Following our decision in Surge and the lifting *1133 of the stay on Nichols's direct appeal, a Court of Appeals commissioner affirmed Nichols's conviction. A panel of that court subsequently denied a motion to modify the commissioner's decision. About one month later, the Court of Appeals lifted the stay on Nichols's PRP and denied it.

II
¶ 5 Because Nichols filed his PRP before his direct review became final, he has avoided the one-year time bar on collateral attacks that is set forth in RCW 10.73.090. Nichols's burden on review here is to establish either a violation of constitutional rights resulting in actual prejudice or a nonconstitutional error that "`constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" In re Pers. Restraint of Lord, 152 Wash.2d 182, 188, 94 P.3d 952 (2004) (quoting In re Pers. Restraint of Cook, 114 Wash.2d 802, 812, 792 P.2d 506 (1990)). The petitioner must also establish that he is under a "restraint" that is unlawful for one of the reasons listed in RAP 16.4(c). A petition for relief that establishes a constitutional violation resulting in actual prejudice will fall within RAP 16.4(c)(2), which lists as grounds for granting a petition that the conviction was obtained "in violation of the Constitution of the United States or the Constitution . . . of the State of Washington."

A. May Nichols raise an objection to the motel registry search for the first time in his PRP?
¶ 6 As noted above, Nichols contends that the alleged search of the motel guest registry violated article I, section 7 of our state constitution. Because Nichols did not raise that issue at trial or in his direct appeal, we are, at the outset, presented with the question of whether he can raise the issue for the first time in a PRP. The court reasoned that Nichols waived any objection to the search of the motel registry by failing to seek suppression at trial of the evidence obtained from that search. The Court of Appeals indicated that its decision was compelled by cases that hold that a defendant who fails to move at trial to suppress improperly obtained evidence waives the right to raise the issue on direct appeal. It reasoned that "[i]f the issue is waived and cannot be raised on direct appeal, then it cannot be raised in a personal restraint petition either." In re Pers. Restraint of Nichols, 151 Wash. App. 262, 269, 211 P.3d 462 (2009).
¶ 7 The Court of Appeals is incorrect. We say that because it is well established that a constitutional issue can be raised for the first time in a PRP if the petitioner demonstrates actual prejudice. Indeed, the seminal case so holding is In re Personal Restraint of Hews, 99 Wash.2d 80, 660 P.2d 263 (1983), where this court held that a petitioner did not waive his right to challenge in a PRP an allegedly involuntary guilty plea by failing to raise the issue on direct review. See also In re Pers. Restraint of Markel, 154 Wash.2d 262, 111 P.3d 249 (2005); In re Pers. Restraint of Davis, 152 Wash.2d 647, 101 P.3d 1 (2004).
¶ 8 The Court of Appeals determined that Hews was inapplicable to Nichols's case because "Nichols'[s] problem is not his failure to raise the suppression issue in his direct appeal" but, rather, a "failure to move to suppress at trial." Nichols, 151 Wash.App. at 270, 211 P.3d 462. While Hews is undeniably different than the case before us in the sense that Hews dealt with a challenge to the voluntariness of a plea rather than to a search and seizure, the cases are similar in that the petitioner in Hews almost certainly did not challenge the voluntariness of his plea at the trial. Furthermore, in State v. Robinson, 171 Wash.2d 292, 253 P.3d 84 (2011) (consolidated with State v. Millan, 168 Wash.2d 1005, 226 P.3d 781 (2010)), we held that a defendant may challenge a search for the first time on appeal following a change in constitutional interpretation.
¶ 9 The State contends, additionally, that a search and seizure issue may not be raised for the first time in a PRP because, absent a suppression motion, the record is insufficient for review. That argument would have more weight if the matter was before us on direct review. In a PRP, however, the petitioner and State are both allowed to present affidavits with relevant evidence *1134 outside the existing record. In re Pers. Restraint of Rice, 118 Wash.2d 876, 885, 828 P.2d 1086 (1992); RAP 16.7(a)(2). In addition, if necessary, the appellate court can order a reference hearing to develop additional evidence. RAP 16.11-.13.
¶ 10 Finally, the State submits that we should decline to review search and seizure claims in a PRP because the costs of applying the exclusionary ruling in a collateral attack outweighs its benefits. We have consistently rejected the sort of balancing test that federal courts apply in applying the exclusionary rule, and we have done so because we view our exclusionary rule as "constitutionally mandated, exist[ing] primarily to vindicate personal privacy rights," rather than simply as a "judicially-created prophylactic measure designed to deter police misconduct." State v. Chenoweth, 160 Wash.2d 454, 472 n. 14, 158 P.3d 595 (2007).
¶ 11 In sum, for reasons stated above, we hold that a petitioner can raise an article I, section 7 claim for the first time in a PRP. The claim must, of course, meet the established requirements for a timely PRP that we have set forth above.

B. Does this court's decision in Jorden apply retroactively to Nichols's PRP?
¶ 12 The Court of Appeals held that Nichols was required to prove that Jorden applied retroactively and that it failed to do so. In reaching that decision, the court relied on In re Personal Restraint of Taylor, 105 Wash.2d 683, 717 P.2d 755 (1986). The State concedes that Jorden applies retroactively and that the Court of Appeals erred in relying on Taylor because that case has been superseded. The State's concession is understandable since under current retroactivity analysis, a new rule of criminal procedure applies retroactively to all cases not yet final at the time of decision. In re Pers. Restraint of St. Pierre, 118 Wash.2d 321, 823 P.2d 492 (1992). Notably, in St. Pierre we explicitly rejected the test applied in Taylor and determined that a case that was decided a mere eight days before a petitioner's motion for reconsideration was denied did apply retroactively.

C. Did examination of the motel registry violate article I, section 7 of the state constitution?
¶ 13 Nichols contends that the Seattle police officers' warrantless examination of the Travelodge motel registry was improper under our decision in Jorden and that any evidence seized as a consequence of the examination should not have been admitted into evidence.[1] The State responds that Jorden is inapplicable to a case like the instant where the law enforcement officers had an individualized and particularized suspicion regarding the subject of the search.
¶ 14 In Jorden, we were called upon to consider the lawfulness of a search that flowed from a program that had been instituted by the Lakewood Police Department. The record showed that police officers of that city were encouraged to regularly review guest registries at motels in high crime areas in order to ascertain if there were outstanding arrest warrants for any of the persons registered there. Timothy Jorden, whose presence at a Lakewood motel was discovered via warrantless and random examination of a motel guest registry, was taken into custody under this program. Because cocaine was found in his possession following a search incident to his arrest, he was charged with unlawful possession of the substance.
¶ 15 Jorden contended that Lakewood's practice of randomly viewing motel registries violated his rights under article I, section 7 of the state constitution.[2] The State's response in Jorden was that there was no violation of the state constitution because the motel registration information was not a "private affair." Although we concluded that the activity engaged in by the Lakewood *1135 police officers was an intrusion on Jorden's private affairs, we went on to imply that our decision was limited to the type of suspicionless search that occurred in that case:
We hesitate to allow a search of a citizen's private affairs where the government cannot express at least an individualized or particularized suspicion about the search subject or present a valid exception to a warrantless search. A random, suspicionless search is a fishing expedition, and we have indicated displeasure with such practices on many occasions.
Jorden, 160 Wash.2d at 130, 156 P.3d 893 (emphasis added).
¶ 16 A fair reading of our opinion in Jorden is that motel guest registries are "private affairs" only to a limited extent. Indeed, in Jorden we recognized that in prior cases we have recognized that hotel or motel guest registries were not historically considered private when police officers had an individualized and particularized suspicion regarding a guest. Id. at 127-28, 156 P.3d 893. Such a tiered understanding of what is a private affair under article I, section 7 of our state constitution is not without precedent. In a number of cases we have expressed displeasure at random and suspicionless searches, "fishing expeditions," while at the same time recognizing that searches of the same person or property with individualized suspicion can pass constitutional muster. In that regard, see, e.g., City of Seattle v. Mesiani, 110 Wash.2d 454, 755 P.2d 775 (1988), in which this court held that a program involving "random" road block sobriety checkpoints violated article I, section 7 because it lacked particularized and individualized suspicion, and York v. Wahkiakum School District No. 200, 163 Wash.2d 297, 178 P.3d 995 (2008), in which we struck down a school district's program of urinalysis drug testing of student athletes where the testing was done without any individualized suspicion of drug use.

D. Claim of ineffective assistance of counsel
¶ 17 Nichols contends that his trial and appellate counsel were both ineffective because they failed to argue that the examination of the motel registry by the Seattle police violated article I, section 7 of our state's constitution. To establish an ineffective assistance of counsel claim, a defendant must prove that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant such that there is a reasonable probability that the proceeding would have turned out differently without counsel's errors. Strickland v. Washington, 466 U.S. 668, 687-95, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987) (adopting Strickland in the criminal context). A strong presumption exists that counsel's conduct was reasonable, and the defendant bears the burden of proving that the challenged action was not a legitimate trial strategy. Strickland, 466 U.S. at 689, 104 S.Ct. 2052; State v. Reichenbach, 153 Wash.2d 126, 130, 101 P.3d 80 (2004).
¶ 18 In light of our conclusion that the examination of the motel registry that took place here did not violate the aforementioned provision in our state constitution, we conclude that Nichols has failed to meet his burden under Strickland.

III
¶ 19 In sum, we conclude that because the questioning of the desk clerk at the Travelodge was not random and was conducted only because the police officers had individualized suspicion that drug selling activity had taken place in room 56 of that motel, the examination of the registry that took place shortly thereafter did not violate article I, section 7 of our state constitution. The Court of Appeals is affirmed.
WE CONCUR: CHARLES W. JOHNSON, JAMES M. JOHNSON and DEBRA L. STEPHENS, Justices.
MADSEN, C.J. (concurring).
¶ 1 I agree with the result the lead opinion reaches for the reasons I discussed at length in State v. Jorden, 160 Wash.2d 121, 135, 156 P.3d 893 (2007) (Madsen, J., dissenting).
*1136 FAIRHURST, J. (dissenting).
¶ 2 By limiting the privacy interest in motel registry information, the lead opinion contravenes the structure of article I, section 7 of the Washington Constitution, undermines its protections, and attempts to circumvent the warrant requirement. I dissent.
¶ 3 Whether article I, section 7 permits a search is based on a straightforward, twopart inquiry. We first determine whether the State has disturbed a private affair. State v. Valdez, 167 Wash.2d 761, 772, 224 P.3d 751 (2009) (citing York v. Wahkiakum Sch. Dist. No. 200, 163 Wash.2d 297, 306, 178 P.3d 995 (2008)). Then, we ask whether authority of law justified the government's intrusion. Id. Authority of law requires a valid warrant unless one of "a few jealously guarded exceptions" applies, including exigent circumstances, consent, searches incident to an arrest, inventory searches, plain view doctrine, and Terry[1] stops. York, 163 Wash.2d at 306, 310, 178 P.3d 995. If a defendant's article I, section 7 rights are violated, fruits of the improper search must be suppressed. State v. Ladson, 138 Wash.2d 343, 359, 979 P.2d 833 (1999).
¶ 4 In Glenn Gary Nichols' case, Jorden answered the first part of this two-part test by holding that "the information contained in a motel registryincluding one's whereabouts at the motelis a private affair under our state constitution, and a government trespass into such information is a search." State v. Jorden, 160 Wash.2d 121, 130, 156 P.3d 893 (2007). Because police had no warrant authorizing them to obtain Nichols' information and the State has not argued that any established exception to the warrant requirement applies, no authority of law justifies the search. As such, obtaining Nichols' private information from the Travelodge violated article I, section 7. Suppression of the drugs and buy money was required.
¶ 5 Our particular displeasure at the random, suspicionless nature of the search in Jorden does not mean that motel registry information is private only against that type of search. Jorden's implication that a warrantless search of motel registry information could be justified by individualized and particularized suspicion alone was nonbinding dictum, as no individual, particular suspicion existed in that case. Furthermore, Jorden did not cite a single case where individualized and particularized suspicion alone justified a warrantless search of a private affair.
¶ 6 To read Jorden as authorizing a warrantless motel registry search where only individualized and particularized suspicion exists, would inappropriately undercut the privacy protections of article I, section 7 in the context of an ordinary, nonemergency criminal investigation. The officers investigating Nichols did not appear to have any particular need for immediate action. Nothing indicated that the occupant of room 56 was likely to cause danger to anyone or destroy evidence. Presumably, the officers could have obtained a warrant in the hours that passed between learning that the occupant of room 56 was dealing drugs and obtaining Nichols' registration information from the motel clerk. The officers also could have staked out the room or performed a proper knock-and-talk investigation. See State v. Ferrier, 136 Wash.2d 103, 115-16, 960 P.2d 927 (1998) (outlining requirements for a valid knock-and-talk investigation). "`[W]here the police have ample opportunity to obtain a warrant, we do not look kindly on their failure to do so.'" Id. at 115, 960 P.2d 927 (alteration in original) (internal quotation marks omitted) (quoting State v. Leach, 113 Wash.2d 735, 744, 782 P.2d 1035 (1989)).
¶ 7 By allowing individualized and particularized suspicion alone to diminish the privacy interest in motel registry information, the lead opinion effectively creates an exception to the warrant requirement. Under this new exception, an individualized and particularized suspicion gives officers authority of law to search an individual's private affairs for purely investigatory purposes despite a complete lack of need for immediate action. This exception threatens to swallow the rule. It also unnecessarily undermines the warrant requirement's purpose of reducing the risk of erroneous searches "by interposing a neutral and detached magistrate between the citizen and the officer engaged in the `often competitive *1137 enterprise of ferreting out crime.'" State v. Chenoweth, 160 Wash.2d 454, 478, 158 P.3d 595 (2007) (quoting Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 92 L.Ed. 436 (1948)).
¶ 8 Beyond the dictum of Jorden, the lead opinion relies on two distinguishable cases, City of Seattle v. Mesiani, 110 Wash.2d 454, 755 P.2d 775 (1988) and York, to support its conclusion that the privacy right in motel registry information evaporates when confronted with a nonrandom search. It argues that Mesiani and York support its position because "we have expressed displeasure at random and suspicionless searches, `fishing expeditions,' while at the same time recognizing that searches of the same person or property with individualized suspicion can pass constitutional muster." Lead opinion at 9. Like Jorden, neither Mesiani nor York actually authorized a warrantless search on the basis of only individualized and particularized suspicion. Moreover, the facts of Mesiani and York critically differ from Nichols' case.
¶ 9 In Mesiani, we held that random sobriety checkpoints violated article I, section 7. 110 Wash.2d at 458, 755 P.2d 775. Although Mesiani referred to these checkpoints as lacking "individualized suspicion or probable cause," Mesiani did not suggest that police could search drivers or cars on the basis of individualized and particularized suspicion alone. Id. at 455, 755 P.2d 775. Rather, an established exception to the warrant requirement, the Terry stop, permits police officers to stop and briefly detain drivers on the basis of a reasonable and articulable suspicion of drunk driving. See Ladson, 138 Wash.2d at 352, 979 P.2d 833; State v. Duncan, 146 Wash.2d 166, 172-74, 43 P.3d 513 (2002) (Terry stop requires a reasonable, articulable suspicion, based on specific, objective facts, that the person stopped has committed or is about to commit a crime or a civil traffic infraction). Thus, contrary to the lead opinion's argument, Mesiani's holding that a random search violates article I, section 7 does not necessarily mean that a search of the same person or property based on individualized and particularized suspicion will be constitutionally valid.
¶ 10 In Nichols' case, unlike in Mesiani, no established exception to the warrant requirement justified searching Nichols' motel registry information. The State does not argue that the officers performed a Terry stop, which would have entailed a brief, investigatory detention of a particular person based on a reasonable suspicion that criminal activity was afoot. Rather, the officers sought to learn the identity of a previously unidentified suspect by reviewing private information.
¶ 11 In York, we held that random, suspicionless drug testing of students violated article I, section 7. 163 Wash.2d at 307-10, 178 P.3d 995. We noted that this holding "should in no way contradict" our decisions allowing searches of a student based on individualized and particularized suspicion because students have a "lower expectation of privacy because of the nature of the school environment." Id. at 308, 178 P.3d 995. That unique environment included the need to maintain discipline, a task often requiring immediate action incompatible with obtaining a search warrant. Id. at 309, 178 P.3d 995 (citing State v. McKinnon, 88 Wash.2d 75, 81, 558 P.2d 781 (1977)); see also id. at 330, 178 P.3d 995 (J.M. Johnson, J., concurring) ("a middle and high school drug testing program does not impinge on the jealously guarded private affairs of adult citizens, but on those of adolescents, whose privacy expectations and rights are not the same as those of adults").
¶ 12 A motel is not a special environment like a school. Even assuming unique disciplinary concerns may justify searching a child's person without a warrant, similar concerns do not apply to Nichols' case, where officers searched an inanimate source of information in the course of an ordinary criminal investigation. The information contained in a motel guest registry is one of the "jealously guarded private affairs of adult citizens" that article I, section 7 protects most highly. York, 163 Wash.2d at 330, 178 P.3d 995 (J.M. Johnson, J., concurring). Motel registry information may divulge the intimate details of a guest's life, from extramarital affairs to business associations. Jorden, 160 Wash.2d at 129, 156 P.3d 893. To read York as authorizing limits on privacy rights *1138 outside the unique school environment would undermine York's acknowledgment that "unlike the Fourth Amendment, article I, section 7 is not based on a reasonableness standard." York, 163 Wash.2d at 303, 178 P.3d 995.
¶ 13 I believe Jorden's holding that motel registry information is a private affair, combined with the structure of article I, section 7, compels the conclusion that obtaining Nichols' motel registry information without a warrant violated his constitutional right to hold that information free from unjustified government intrusion. The lead opinion's holding to the contrary fails to jealously guard the exceptions to the warrant requirement, as article I, section 7 requires us to do. I therefore respectfully dissent.
WE CONCUR: TOM CHAMBERS and SUSAN OWENS, Justices, and RICHARD B. SANDERS, Justice Pro Tem.
NOTES
[1] It appears from the record that the Travelodge desk clerk voluntarily disclosed the requested information regarding the occupant of room 56. We, therefore, make no pronouncement as to the standing or right of the motel corporation to assert that its private affairs were violated.
[2] Article I, section 7 of the state constitution provides as follows: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).