# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 71164-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| SHACON FONTANE BARBEE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 28, 2015 |
| | ) | |

LAU, J. —Barbee appeals his convictions for two counts of promoting commercial sexual abuse of a minor, two counts of second degree promoting prostitution, one count of leading organized crime, two counts of first degree theft, and one count of second degree theft.[1] He challenges the convictions, alleging double jeopardy violations, denial of trial severance, unlawful search of a motel registry, improper admission of hearsay evidence, and miscalculation of the seriousness level and standard range on count 1 of promoting commercial sexual abuse of a minor. Barbee's supplemental assignment of error claims jury instruction error based on State v. Brush, 183 Wn.2d 550, 353 P.3d 213 (2015).

---

[1] The State voluntarily dismissed Count 3 of promoting commercial sexual abuse of a minor and count 10 of tampering with a witness.

We conclude Barbee's convictions do not violate the double jeopardy clause, he waived the severance issue and hearsay evidence, police officers conducted a lawful search of the motel registry, and resentencing is unwarranted. But because the trial court miscalculated count 1's seriousness level and standard range and the "pattern of sexual abuse" aggravator jury instruction (WPIC 300.17) misstates the law, we remand to the trial court with instructions to amend the judgment and sentence to correct count 1's seriousness level and standard range and to strike the "pattern of sexual abuse" aggravator. We affirm Barbee's convictions and the exceptional sentence in all other respects.

## FACTS

Shacon Barbee met SE when she was 13-years-old. By the winter of 2010, SE was 16-years-old and working for Barbee as a prostitute.

Barbee instructed SE on various aspects of the prostitution business, including how to speak to clients, what to wear, and how to work in the city's high prostitution areas. Barbee also rented motel rooms for SE to live in and work from.

SE frequently used Barbee's credit card and computer to pay for online advertisements for prostitution.

SE texted him when she arranged a client meeting and received payment. Barbee collected the money after a client departed or at the end of the night.

Barbee required SE to recruit other girls to work as prostitutes. She searched internet sites like MySpace or Facebook for attractive girls. She arranged for the girls to meet Barbee.

Shortly before BK's 18th birthday, SE met BK on a Facebook account. SE met with BK and convinced her to work as an "escort." She introduced BK to Barbee. He gave BK a cell phone, instructions, and arranged a meeting with her first client.

On March 10, 2010, BK was arrested by an undercover detective as she worked on Pacific Highway. Barbee posted bail for her within two hours of the arrest.

On March 25, police received a complaint that prostitutes were inside a motel room at Sutton Suites Motel. Police responded and found SE and BK inside the motel room. The officers found prostitution and "pimping" related items as well as multiple laptop computers. Barbee's laptop contained prostitution advertisements for SE and BK. After her arrest, BK stopped working for Barbee for a couple months. She quit completely soon after.

SE recruited CW using a MySpace account not long after CW turned eighteen. CW moved from Bellingham to Seattle to work for Barbee. CW soon became dissatisfied and texted Barbee to let him know she was quitting. She never worked for him again.

SE worked for Barbee until the end of the summer of 2010 when she quit working for him and moved to Cincinnati and New York. Barbee and SE stayed in touch and he convinced her to return to Seattle.

On December 3, 2010, SE posted an online advertisement for sex. A client called and arranged to meet her at the Hampton Inn Motel.

Barbee drove SE to the motel and waited for her while she went inside. SE agreed to an act of prostitution in the motel room and undercover police officers

arrested her. Barbee drove off as police officers approached. They eventually arrested him.

Police seized Barbee's cell phone as evidence and secured a warrant to search its contents. Using the cell phone's contact list, detectives located online sex advertisements and traced them to SE, CK, and BK. Detectives recovered more than 12,000 text messages sent or received between May 2010 and December 2010. Many of these messages were sent by Barbee to SE, CK, and BK.

BK told police about Barbee's rented storage units. They obtained a warrant and searched the units. They found women's clothing, lingerie, financial documents, receipts, business cards for motels located on Pacific Highway, handwritten sex advertisements, DSHS letters, and "pimp-related" DVDs. Report of Proceedings RP (Sept. 3, 2013) at 118-21. Police also found a safe containing cash of $18,300 and a ledger with a beginning balance of $40,000.

Based on the evidence recovered from the storage units, police obtained records from Barbee's credit union. The records revealed various charges for websites like Backpage.com, Vibe Media, and Craigslist. The records also showed regular deposits of government-issued checks.

During the investigation, police learned that Barbee received regular payments from the Supplemental Security Income Program (SSIP) and the Department of Social and Health Services (DSHS). Barbee failed to report his assets and income as required for the receipt of these government benefits.

The State charged Barbee by fifth amended information with ten counts related to his promoting prostitution enterprise and thefts involving government agencies.

Count 1 Promoting Commercial Sexual Abuse of SE
    Charging Period: between 1/1/10 and 8/31/10
Count 2 Promoting Commercial Sexual Abuse of SE
    Charging Period: between 9/1/10 and 12/31/10
Count 3 Promoting Commercial Sexual Abuse of AM
    Charging Period: between 1/1/10 and 8/1/10
Count 4 Promoting Prostitution in the First Degree of BK
    Charging Period: between 1/1/10 and 12/31/10
Count 5 Promoting Prostitution in the Second Degree of CW
    Charging Period: between 5/10/10 and 8/1/10
Count 6 Leading Organized Crime
    Charging Period: between 1/10/10 and 12/31/10
Count 7 Theft in the first degree from Social Security Administration
    Charging Period: between 1/1/09 and 8/31/09
Count 8 Theft in the first degree from Social Security Administration
    Charging Period: between 9/1/09 and 12/1/10
Count 9 Theft in the second degree from Department of Social and Health Services
    Charging Period: between 1/1/09 and 11/30/10
Count 10 Tampering With a Witness
    Charging Dates: between 12/8/10 and 7/1/10

Clerk's Papers (CP) at 244-48.

After a five-week trial, a jury convicted Barbee as charged on counts 1, 2, 5, 6, 7, 8, 9 and convicted him of the lesser included offense of second degree promoting prostitution on count 4. The jury also found by special verdict that count 1 involved an ongoing pattern of sexual abuse of the same minor involving multiple incidents over a prolonged period of time ("pattern of sexual abuse" aggravator).

The court sentenced Barbee to 420 months on counts 1 and 2, 51 months on counts 4 and 5, 300 months on count 6, 57 months on counts 7 and 8 and 29 months on count 9. The court imposed concurrent sentences on all counts and an exceptional sentence on counts 1 and 2 for a total sentence on all counts of 420 months.

Barbee appeals.

ANALYSIS

Double Jeopardy

Barbee claims that his multiple convictions of promoting commercial sexual abuse of a minor (counts 1 and 2), second degree promoting prostitution (counts 4 and 5) and first degree theft (counts 7 and 8) violate the double jeopardy clause because each crime constitutes a single unit of prosecution. His double jeopardy argument may be raised for the first time on appeal. State v. Adel, 136 Wn.2d 629, 631-32, 965 P.2d 1072 (1998). The issue is a question of law we review de novo. State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).

The double jeopardy clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Washington State Constitution provides that "[n]o person shall be . . . twice put in jeopardy for the same offense." Const. art. I, § 9. The two provisions provide the same protection, and the Washington provision should be given the same interpretation as its federal counterpart. State v. Tvedt, 153 Wn.2d 705, 710, 107 P.3d 728 (2005); State v. Gocken, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995).

"A defendant may face multiple charges arising from the same conduct, but double jeopardy forbids entering multiple convictions for the same offense." State v. Hall, 168 Wn.2d 726, 729-30, 230 P.3d 1048 (2010). "When the [l]egislature defines the scope of a criminal act (the unit of prosecution), double jeopardy protects a defendant from being convicted twice under the same statute for committing just one unit of the crime." Adel, 136 Wn.2d at 634. Thus, the issue here is what unit of prosecution the legislature intends as the punishable act under the relevant statute. The inquiry is

necessary to assure that the prosecutor has not been arbitrary in dividing ongoing criminal conduct into units in order to facilitate separate charges. Adel, 136 Wn.2d at 635. "If the [l]egislature has failed to denote the unit of prosecution in a criminal statute, the United States Supreme Court has declared the ambiguity should be construed in favor of lenity." Adel, 136 Wn.2d at 634-35.

### Promoting Commercial Sexual Abuse of SE

Barbee argues the State's "artificial division of a year-long enterprise into two units of prosecution violated the prohibition against double jeopardy."[2] Br. of Appellant at 20.

The State charged count 1 and count 2 based on two time periods involving SE. Count 1 alleged acts occurring between January 1, 2010, and August 31, 2010. Count 2 alleged acts occurring between September 1, 2010, and December 31, 2010. The promoting commercial sexual abuse of a minor statute provides:

> (1) A person is guilty of promoting commercial sexual abuse of a minor if he or she knowingly advances commercial sexual abuse or a sexually explicit act of a minor or profits from a minor engaged in sexual conduct or a sexually explicit act.
> . . . .
> (3)(a) A person "advances commercial sexual abuse of a minor" if . . . he or she . . . engages in any other conduct designed to institute, aid, cause, assist, or facilitate an act or enterprise of commercial sexual abuse of a minor.
>
> (b) A person "profits from commercial sexual abuse of a minor" if. . . . he or she accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he or she participates or will participate in the proceeds of commercial sexual abuse of a minor.

---

[2] Barbee claims State v. Gooden, 51 Wn. App. 615, 754 P.2d 1000 (1988), resolved the unit of prosecution question. But Gooden addressed jury unanimity not unit of prosecution.

RCW 9.68A.101 (emphasis added).

RCW 9.68A.101(3)(a) refers to both an "act" or an "enterprise." The statute's plain language indicates the legislature defined the unit of prosecution as either a discrete act or an ongoing enterprise of promoting commercial sexual abuse of a minor.

Even where the legislature has expressed its intent, the court must still perform a factual analysis regarding the unit of prosecution for a particular case. State v. K.R., 169 Wn. App. 742, 748, 282 P.3d 1112 (2012). Here, SE worked steadily for Barbee from early 2010 through August 2010 (count 1). SE quit working for Barbee intent on not working for him again and moved out of state. In late November 2010, Barbee convinced her to return to work for him as a prostitute. He arranged for her to commit a single act of prostitution which resulted in her arrest (count 2). Barbee attempts to bridge this three-month period between counts 1 and 2, arguing that Barbee's efforts to get SE back to Seattle counts as part of the promoting commercial sexual abuse of SE enterprise that began in early 2010 and ended in her arrest in December 2010. Thus, he claims this continuing course of conduct is a single unit of prosecution.

We disagree. The facts show two time periods in which Barbee promoted the commercial sexual abuse of SE as reflected in counts 1 and 2. The undisputed facts show a three-month time period between counts 1 and 2 where Barbee engaged in no "act" or "enterprise" of promoting commercial sexual abuse of SE. SE had left Washington State with the intent of never working for Barbee again. These facts and the statute's plain language establish two separate, independent criminal "act[s]" or "enterprise[s]." Thus, counts 1 and 2 each constitute a single unit of prosecution.

We conclude that Barbee's convictions for two counts of promoting commercial sexual abuse of SE did not violate the double jeopardy clause.

<u>Promoting Prostitution in the Second Degree of BK and CW</u>

Barbee contends that his two counts of second degree promoting prostitution involving BK and CW constitute a single unit of prosecution because both counts overlapped in time and the legislature intended a single unit of prosecution.

Count 4 charged Barbee with first degree promoting prostitution involving BK between January 1, 2010, and December 31, 2010.[3] Count 5 charged Barbee with second degree promoting prostitution involving CW between May 10, 2010, and August 1, 2010.

RCW 9A.88.080 defines the crime of second degree promoting prostitution:

> (1) A person is guilty of promoting prostitution in the second degree if he or she knowingly:
> (a) Profits from prostitution; or
> (b) Advances prostitution.
> (2) Promoting prostitution in the second degree is a class C felony.

RCW 9A.88.080.

Barbee relies on <u>State v. Mason</u>, 31 Wn. App. 680, 644 P.2d 710 (1982). The defendant was convicted of promoting the prostitution of three of her employees. In resolving the unit of prosecution issue, Division Two of this court determined that the promoting prostitution statute was ambiguous and applied the rule of lenity in the defendant's favor, concluding that her convictions involve a single unit of prosecution. In other words, <u>Mason</u> never reached the legislative intent question.

---

[3] The jury convicted him of the lesser included crime of second degree promoting prostitution.

In State v. Tu Nam Song, 50 Wn. App. 325, 748 P.2d 273 (1988), Division One of this court applied a unit of prosecution analysis. The defendant was convicted of one count of promoting prostitution and two counts of attempted promoting prostitution involving three prostitutes. The defendant relied on Mason, arguing her convictions constitute a single unit of prosecution. We disagreed with Mason's rule of lenity analysis: "[t]o the extent that the Mason court's holding applies to this case, we disagree with its rationale. The rule of lenity comes into play only where a statute is ambiguous. RCW 9A.88.080 is not ambiguous. There is simply no indication of legislative intent to impose a single punishment." Song, 50 Wn. App. at 328. Unlike in Mason, we addressed the legislature's intent as clearly expressed in the statute's language:

> The Mason court acknowledged that "[t]he legislature could make a person's simultaneous promotion of prostitution on the part of more than one prostitute a criminal act as to each, liable to cumulative punishment." Mason, 31 Wn. App. at 686. Our reading of the statute persuades us that the [l]egislature did precisely that.

Song, 50 Wn. App. at 328.

Song controls. Barbee provides no persuasive argument that Song is incorrect and harmful. We conclude that Barbee's two convictions for second degree promoting prostitution involving BK and CW do not violate the double jeopardy clause.

### First Degree Theft

Barbee contends that his two convictions for first degree theft involving unlawfully obtained supplemental security income benefits (SSI) from the Social Security Administration (SSA) encompass one unit of prosecution. He argues the two counts should have been aggregated, resulting in a single unit of prosecution, and the rule of lenity applies to the relevant statute.

To collect SSI benefits, an approved applicant is required to report any outside income within ten days following the end of the month in which it is received. Barbee failed to report any of his prostitution-related income as required.

Count 7 alleged first degree theft of currency from January 1, 2009, through August 31, 2009, valued in excess of $1,500. Count 8 alleged first degree theft of currency from September 1, 2009, through December 1, 2010, valued in excess of $5,000.

Effective August 31, 2009, the first degree theft statute was amended to increase the monetary threshold from $1,500 to $5,000. LAWS OF 2009, ch. 431, § 7(1)(a). The time periods charged by the State in each count conform to this change in the law.[4]

The statute for theft in the first degree states:

(1) A person is guilty of theft in the first degree if he or she commits theft of:
(a) Property or services which exceed(s) five thousand dollars in value other than a firearm as defined in RCW 9.41.010.

RCW 9A.56.030.

"Theft" is defined by statute as:

(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or
(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or
(c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him or her of such property or services.

RCW 9A.56.020(1).

---

[4] Count 7 charged first degree theft under the former statute. Count 8 charged first degree theft under the amended statute.

Barbee relies principally on State v. Vining, 2 Wn. App. 802, 472 P.2d 564 (1970), and State v. Turner, 102 Wn. App. 202, 6 P.3d 1226 (2000), to argue his convictions violate double jeopardy. But Vining is inapposite. That case addressed the State's ability to charge theft, not the question of whether two convictions violate double jeopardy.

Barbee also relies on State v. Turner.[5] Turner involved a financial director who embezzled from his employer 72 times using 4 different schemes at the same time to accomplish the thefts over a 10-month period. Turner, 102 Wn. App. at 204. In addressing the unit of prosecution question, the court noted that the key issue was whether the legislature intended multiple punishments for thefts by different schemes involving the same person over the same time period. The court applied the rule of lenity in favor of the defendant because the statute's "lack of clarity creates ambiguity" on the unit of prosecution question. Turner, 102 Wn. App. at 209. Unlike in Turner, Barbee repeatedly used the same scheme to commit first degree theft. Turner is not persuasive.[6] See State v. Reeder, No. 90577-1, slip op. at 26-27 (Wash. Dec. 17, 2015).

State v. Kinneman, 120 Wn. App. 327, 84 P.3d 882 (2003) controls here. In Kinneman, a lawyer made 67 unauthorized withdrawals from his Interest on Lawyer Trust Account (IOLTA). He was convicted of 28 counts of first degree theft and 39

---

[5] Barbee also relies on State v. Perkerewicz, 4 Wn. App. 937, 486 P.2d 97 (1971). As in Vining, Perkerewicz is not a double jeopardy case.

[6] In State v. Kinneman, 120 Wn. App. 327, 84 P.3d 882 (2003), discussed below, the defendant, like Barbee, argued that under Turner, the rule of lenity should apply. Kinneman rejected that argument, explaining that, "[t]his case does not concern the question of multiple schemes considered in Turner." Kinneman, 120 Wn. App. at 336.

counts of second degree theft. He argued that his multiple convictions violated double jeopardy. Applying a unit of prosecution analysis to the first degree and second degree theft statutes, the court upheld the convictions reasoning that "each of Kinneman's withdrawals constituted a separate theft." Kinneman, 120 Wn. App. at 338. The court explained that "[t]he thefts occurred in the same place from the same victim. However, the thefts did not occur at the same time. Accordingly, each separate withdrawal can be viewed as a discrete theft." Kinneman, 120 Wn. App. at 338. Kinneman concluded that the multiple theft convictions do not violate double jeopardy.

Barbee had a continuing obligation to report new income within ten days from the end of each month. He reported no income at any time. Under Kinneman, Barbee's theft convictions based on his receipt of SSI benefits from the period January 1, 2009, through August 31, 2009, and the period from September 1, 2009, through December 1, 2010, involves two discrete thefts. Thus, each theft count constitutes a single unit of prosecution. Barbee's multiple theft convictions do not violate the double jeopardy clause.

Leading Organized Crime—Merger Doctrine

Barbee contends that his convictions for promoting prostitution (counts 4 and 5) merged into his conviction for leading organized crime (count 6) because proof of promoting prostitution necessarily proves the charge of leading organized crime. Thus, convictions of all three charges violate the double jeopardy clause. We disagree.

State v. Harris, 167 Wn. App. 340, 272 P.3d 299 (2012), controls Barbee's merger challenge.[7]

---

[7] We are not persuaded by Barbee's attempt to distinguish Harris.

-13-

The doctrine of merger evaluates whether the legislature intended multiple crimes to merge into a single crime for punishment purposes. State v. Vladovic, 99 Wn.2d 413, 419 n.2, 662 P.2d 853 (1983) (citing Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)). Merger applies only where the State is required to prove an act separately defined as a crime by the criminal statutes to prove an additional crime. Vladovic, 99 Wn.2d at 420-21.

The leading organized crime statute provides, in relevant part:

(1) A person commits the offense of leading organized crime by:

(a) Intentionally organizing, managing, directing, supervising, or financing any three or more persons with the intent to engage in a pattern of criminal profiteering activity;

RCW 9A.82.060.

In Harris, the defendant was convicted of leading organized crime, two counts of money laundering, solicitation to commit first degree murder, two counts of unlawful delivery of cocaine, and maintaining a building for drug purposes. Similar to Barbee's assertion, the defendant argued that his predicate offenses all merged into the leading organized crime conviction because they were incidental to, a part of, or coexistent with his conviction for leading organized crime. The defendant, like Barbee, was charged with the same subsection of the leading organized crime statute quoted above.

The Harris court acknowledged that "the element of 'pattern of criminal profiteering activity' requires predicate crimes . . . ." Harris, 167 Wn. App. at 356. To determine whether the legislature intended multiple punishments, the court looked for "clear evidence that the legislature considered the offenses to be a separate and distinct harm." Harris, 167 Wn. App. at 356.

-14-

In 1984, the legislature created the crime of leading organized crime as part of chapter 9A.82 RCW (currently the Criminal Profiteering Act). The Act was modeled after the federal RICO statute. The Act's purpose was to "combat organized crime." FINAL LEGISLATIVE REPORT, 48th Leg., at 197 (Wash. 1984); Harris, 167 Wn. App. at 356. The court cited to the 1984 Legislative Report discussing the Act's overall purpose:

> A Washington State RICO would provide similarly effective tools for law enforcement officers in their efforts to thwart the sophisticated elements of organized crime.
> . . . .
> New crimes aimed at conduct associated with organized crime and the use of funds gained through illegal activities are created including . . . leading organized crime. The commission of these new crimes and other serious crimes already in statute is known as "racketeering."

FINAL LEGISLATIVE REPORT at 197-98 (emphasis added); Harris, 167 Wn. App. at 357.

The court observed that "a community faces greater peril from collective activity than it does from criminal activity by one individual." Harris, 167 Wn. App. at 357 (citation omitted). The court cited to the legislative reports, concluding that "the legislature intended to create 'new crimes' because the legislature did not intend for the predicate crimes to merge with the new crimes of leading organized crime." Harris, 167 Wn. App. at 357. It also concluded that "the legislature intended additional punishment for the societal harm of leading organized crime, a punishment separate and distinct from any underlying predicate crimes." Harris, 167 Wn. App. at 357. The court held that Harris' "convictions for predicate offenses and the crime of leading organized crime do not constitute double jeopardy." Harris, 167 Wn. App. at 358.

Under Harris, Barbee's convictions for promoting prostitution and leading organized crime do not violate the double jeopardy clause.

Motion to Sever

Barbee argues that the trial court improperly denied his motion to sever the prostitution-related charges from the theft charges.

Before trial, Barbee moved to sever the theft charges from the prostitution-related charges because the charges were unrelated. The trial court denied the request. Barbee never renewed his motion either before or at the close of all the evidence.

Under Criminal Rule 4.4, where a defendant's pretrial motion for severance is overruled, "[s]everance is waived by failure to renew the motion." CrR 4.4(a)(2). Because Barbee failed to renew his motion, this issue is waived.

Warrantless Search of Hotel Registry

Barbee argues that after arresting SE and BK for prostitution, police conducted a warrantless search of the Sutton Suites Motel registry and learned that the room was registered to him.

It is unclear from the record whether police searched the motel registry itself, or received the information from motel management.

Barbee relies on State v. Jorden, 160 Wn.2d 121, 156 P.3d 893 (2007), arguing that the warrantless search violated a privacy interest protected by article I, section 7 of the Washington Constitution. Jorden is distinguishable. Unlike the present case, Jorden involved whether police may perform random, warrantless searches of motel registries.

In re Pers. Restraint of Nichols, 171 Wn.2d 370, 256 P.3d 1131 (2011) controls. Like the present case, Nichols involved the search of a motel registry where officers had formed individualized suspicion of criminal activity in a particular hotel room. Nichols,

171 Wn.2d at 371-72. The Supreme Court distinguished <u>Jorden</u>, explaining that <u>Jorden</u> involved an instance of police conducting random warrantless searches of motel registries.

> We hesitate to allow a search of a citizen's private affairs <u>where the government cannot express at least an individualized or particularized suspicion about the search subject</u> or present a valid exception to a warrantless search. <u>A random, suspicionless search is a fishing expedition</u>, and we have indicated displeasure with such practices on many occasions.

<u>Nichols</u>, 171 Wn.2d at 377 (quoting <u>Jorden</u>, 160 Wn.2d at 130) (emphasis in <u>Nichols</u>). The court concluded that no unconstitutional search occurred because police questioning of the clerk was not random, "and was conducted only because the police officers had individualized suspicion that drug selling activity had taken place in room 56 of that motel." <u>Nichols</u>, 171 Wn.2d at 378-79.

Here, because officers had formed individualized suspicion of criminal activity in a particular hotel room, the warrantless search of the motel registry to obtain registration information was lawful.

### Hearsay Statements

Barbee claims the trial court erroneously admitted statements under ER 801(d)(2)(v), the coconspirator hearsay exception.[8]

The State moved in limine to admit evidence of coconspirator statements by SE, BK, CW, and AM.

Barbee opposed the admission of the statements, arguing the State is not permitted to use the statements to establish the conspiracy.

---

[8] Our review is hampered by Barbee's failure to identify any specific statements he claims were erroneously admitted.

> [T]he State is relying heavily on the statements themselves, the hearsay statements, to support the existence of the conspiracy. And I think it is important for the Court to remember that they have to establish that independent—or by evidence independent of the hearsay, that the conspiracy existed at the time the statements were made. So I think that's the main point that the defense would have in this case in asking to keep those out.

RP (Aug. 1, 2013) at 101.

The trial court admitted the statements as non-hearsay under ER 801(d)(2)(v).[9]

Barbee contends on appeal:

> The trial court abused its discretion here. S.E., [BK], and [CW] were not co-conspirators because they did not agree to engage in or cause conduct that constituted leading organized crime by promoting prostitution.

Br. of Appellant at 39.

The State alleges that Barbee failed to preserve this issue for review by not objecting on these grounds below. We agree. Generally, a party may assign error in the appellate court only on the specific ground of the objection made at trial. State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1185 (1985). "Objections to the admission of evidence will not be considered for the first time on appeal unless based upon the same ground asserted at trial." State v. Stevens, 58 Wn. App. 478, 486, 794 P.2d 38 (1990). Barbee waived this claim of error on appeal.

### Miscalculated Standard Range—Count 1

Barbee contends that he is entitled to be resentenced because the standard range for count 1 was miscalculated.[10] The question here is whether the standard

---

[9] A statement is not hearsay if it is offered against a party and is a statement by a coconspirator made in furtherance of the conspiracy.

[10] We note this argument is based on Barbee's erroneous assertion, discussed above, that counts 1 and 2 constitute a single unit of prosecution. He argues that this single crime yields a standard range sentence of 108-144 months.

range miscalculation merits a new sentencing. Barbee was convicted in count 1 of promoting commercial sexual abuse of SE between January 1, 2010, and August 31, 2010. Before June 30, 2010, the seriousness level was 8 resulting in a standard range of 108 to 144 months. After June 30, 2010, the seriousness level was 12 resulting in a standard range of 240-318 months.[11]

Barbee correctly cites the rule in In re Pers. Restraint of Hartzell, 108 Wn. App. 934, 945, 33 P.3d 1096 (2001), if "the evidence presented at trial indicates the crime was committed before the increase went into effect, the lesser sentence must be imposed." Here, the jury was not instructed to decide whether the acts occurred before or after June 30, 2010.

"A sentencing court must ordinarily correctly calculate the standard range before imposing an exceptional sentence . . . remand for resentencing is the remedy unless the record clearly indicates the sentencing court would have imposed the same sentence anyway." State v. Parker, 132 Wn.2d 182, 192, 937 P.2d 575 (1997).

The court imposed concurrent exceptional sentences for counts 1 and 2 of 420 months. The trial court based its exceptional sentence for count 1 on two, independent aggravating factors—the "pattern of sexual abuse aggravator," under RCW 9.94A.535(3)(g), and the high offender score and multiple current offenses ("free crimes") aggravator, under RCW 9.94A.535(2)(c).[12] Barbee does not challenge count 2's standard range calculation. For this count, the court imposed an exceptional sentence based on the "free crimes" aggravator.

---

[11] LAWS OF 2010, ch. 289, § 14; RCW 9.68A.101.

[12] Barbee does not dispute his offender score is 21.5 for counts 1 and 2 despite the standard range miscalculation.

The record here clearly demonstrates the court would have imposed the same sentence anyway. The court concluded that each aggravating factor alone warranted an exceptional sentence. The court's conclusions of law state:

> Each one of these aggravating circumstances is a substantial and compelling reason, standing alone, that is sufficient justification for the length of the exceptional sentence imposed. In the event that an appellate court affirms at least one of the substantial and compelling reasons, the length of the sentence should remain the same.

CP at 333.

Barbee is not entitled to be resentenced under the circumstances here. We remand to the trial court nevertheless to amend the judgment and sentence to correct count 1's miscalculated seriousness level and standard range.

"Pattern of Sexual Abuse" Aggravator—Count 1[13]

Barbee contends that under State v. Brush, 183 Wn.2d 550, 353 P.3d 213 (2015), his exceptional sentence for count 1 must be reversed based on prejudicial jury instruction error.

As discussed above, the court imposed an exceptional sentence of 420 months for count 1 based on "pattern of sexual abuse" aggravator and "free crimes" aggravator. While this appeal was pending, the Supreme Court decided State v. Brush. The court concluded that the "pattern of sexual abuse" aggravator (WPIC 300.17) misstates the law, relieves the State of its burden of proof, and constitutes a judicial comment on the evidence. Because the State "does not meet the high burden of showing from the

---

[13] Barbee moved to file supplemental assignments of error based on the Supreme Court decision in State v. Brush, 183 Wn.2d 550, 353 P.3d 213 (2015), which was decided after the parties completed their briefing in this case. We grant Barbee's motion.

record that 'no prejudice could have resulted,'" it reversed Brush's exceptional sentence on that basis. Brush, 183 Wn.2d at 559-60, quoting State v. Levy, 156 Wn.2d 709, 723, 132 P.3d 1076 (2006).

The "pattern of sexual abuse" aggravator jury instruction used in count 1 is the same faulty pattern instruction used in Brush. As in Brush, here the State does not meet the high burden of showing from the record "no prejudice could have resulted." Brush, 183 Wn.2d at 559-60. Unlike in Brush, we decline to reverse the exceptional sentence imposed on count 1. As discussed above, the trial court clearly indicated it would have given the same sentence, if "an appellate court affirms at least one of the substantial and compelling reasons, the length of the sentence should remain the same." CP at 333. Here, the court imposed an exceptional sentence of 420 months for counts 1 and 2 based on the unchallenged "free crimes" aggravator.

Under Brush, we remand to the trial court with instructions to amend the judgment and sentence, striking the "pattern of sexual abuse" aggravator. We otherwise affirm the exceptional sentence in all respects.

Statement of Additional Grounds

Barbee filed a statement of additional grounds (SAG) alleging two bases for review. He contends for the first time on appeal:

> I was sentenced to a substantial amount of money and being indigent is not fair and unjust I do not know the legal term for this but am aware that it is not right. Recommend that it be reduced to zero due to me being indigent thank you.

SAG at 1.

At sentencing, defense counsel requested the court to waive the mandatory fees associated with Barbee's promoting commercial sexual abuse of a minor convictions.

He also asked the court to waive interest and trust fees. The court went further, it waived all nonmandatory costs and fees and cut the statutory fee for promoting commercial sexual abuse of a minor by one-third.[14] In the end, the court granted defense counsel's request and imposed only mandatory fees and costs of $3,950.[15] Even assuming the issue is properly preserved on review, the trial court granted the relief he requested. The trial court did not abuse its discretion.

Barbee also argues for the first time on appeal:

> I was arrested before the alleged victim was arrested and this is unjust and the arresting officer did not know why he was arresting me look at the police report for my arrest thank you.

SAG at 1.

While Barbee is not necessarily required to cite to the record or to legal authority, an appellate court will not consider an appellant's SAG if it does not inform the court of the nature and occurrence of alleged errors. RAP 10.10(c); State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). Beyond the conclusory assertion that arresting him before arresting "the alleged victim" was unjust, Barbee cites no principle of law that allows relief here. We decline to review this issue.

## CONCLUSION

We conclude Barbee's convictions do not violate the double jeopardy clause, he waived the severance and hearsay evidence issues, police officers conducted a lawful search of the motel registry, and resentencing is unwarranted. But because the trial

---

[14] $3,350 instead of $5,000, $500 victim penalty assessment and $100 DNA collection fee.

[15] These nonmandatory fees and costs include court costs, recoupment of public defense costs and incarcerations costs. The mandatory statutory fee is $5,000.

court miscalculated count 1's seriousness level and standard range and the "pattern of sexual abuse" aggravator jury instruction (WPIC 300.17) misstates the law, we remand to the trial court with instructions to amend the judgment and sentence, correcting count 1's seriousness level and standard range and striking the "pattern of sexual abuse" aggravator. We otherwise affirm Barbee's convictions and the exceptional sentence in all other respects.

WE CONCUR: