# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>    Respondent,<br><br>  v.<br><br>CHRISTOPHER MICHAEL RAMSEY,<br><br>    Appellant. | No. 78666-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: November 12, 2019 |

APPELWICK, C.J. — Ramsey appeals his convictions for second degree burglary and third degree malicious mischief. He argues that the trial court erred in denying his motion to suppress evidence discovered through an officer's warrantless search of a hotel registry. Specifically, he argues that individualized and particularized suspicion alone does not authorize such a search. We affirm.

## FACTS

In the early morning hours of January 23, 2017, Officer Warren Creech and his patrol dog, Earl, responded to a report of an audible alarm at a Union 76 gas station in Lynnwood. When Creech arrived, he observed a shattered sliding glass door. When he looked inside the gas station's convenience store, he saw broken glass and a fire extinguisher lying on the floor. It appeared that the fire extinguisher had been thrown through the doorway to gain entry into the store. He and another officer searched the store, but did not find anyone inside. They suspected that someone had committed burglary.

Creech then began a human scent track with Earl. He started the track at the shattered glass door. Earl tracked generally eastbound away from the gas station, through several business complexes, and along the Interurban trail. While the track progressed, Earl displayed behavior consistent with actively tracking human scent. He stopped tracking in an area adjacent to a Courtyard Marriott hotel. After concluding the track, Creech went back to the gas station, placed Earl in his patrol car, and returned to the hotel.

At the hotel, Creech asked the clerk on duty if he had seen anyone matching a suspect description provided to him by other officers. The clerk responded that he had. He stated that someone matching the description had come in and ordered a salad. A sergeant on scene at the gas station eventually texted Creech a photo from the station's surveillance footage. Creech showed the photo to the clerk, who confirmed that the person in the photo was the same person who had ordered a salad. The clerk stated that the salad had been charged to the person's room.

Creech then asked the clerk if he could provide the name and room number of the individual. The clerk agreed and searched the hotel registry. He provided Creech with the name Christopher Ramsey and the room number 337. Creech went to the room and knocked on the door, but no one responded. A judge later authorized a search warrant for room 337, and officers located Ramsey in the room.

The State charged Ramsey with second degree burglary and second degree malicious mischief. Before trial, Ramsey moved to suppress all evidence discovered through Creech's warrantless search of the hotel registry. The trial court denied the motion.

A jury found Ramsey guilty of second degree burglary and the lesser offense of third degree malicious mischief. The trial court sentenced him to 31 days of confinement, with credit for one day served. It then converted the remaining 30 days into 240 hours of community service. Ramsey appeals.

## DISCUSSION

Ramsey argues that the trial court erred in denying his motion to suppress the evidence discovered through Creech's search of the hotel registry. Specifically, he asserts that the trial court's reading of the decisions in State v. Jorden, 160 Wn.2d 121, 156 P.3d 893 (2007), and In re Pers. Restraint of Nichols, 171 Wn.2d 370, 256 P.3d 1131 (2011), "violated the Washington Constitution."

The trial court relied on both Jorden and Nichols in denying Ramsey's motion. Ramsey asserts that the court relied on Nichols to find that "individualized and particularized suspicion was sufficient to authorize the search of the motel registry." But, he contends that "[n]either Nichols nor Jorden supports the trial court's assertion." He argues instead that either a warrant or an established exception to the warrant requirement was necessary to search the hotel registry.

Article I, section 7 of the Washington Constitution protects against unwarranted government intrusions into private affairs. Warrantless searches are

per se unreasonable. State v. Doughty, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). The State has the burden to demonstrate that a warrantless search falls within an exception to the rule. Id.

When reviewing the denial of a suppression motion, an appellate court determines whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law. State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is substantial when it is enough to persuade a fair-minded person of the truth of the stated premise. Id. This court reviews conclusions of law from an order pertaining to the suppression of evidence de novo. Id.

In Jorden, an officer conducted a random check of a motel's guest registry. 160 Wn.2d at 124. When the officer ran Jorden's name, he found that Jorden had outstanding felony warrants. Id. The officer then went to Jorden's room, where he found Jorden and a tin containing crack cocaine. Id. at 124-25. Jorden was later charged and convicted of unlawful possession of a controlled substance. Id. at 125.

On appeal, Jorden argued that the random registry check violated his state constitutional protections. Id. The State Supreme Court agreed. Id. at 131. First, it differentiated the case from prior cases where law enforcement had a particularized and individualized suspicion about the suspect that preceded review of the registry. Id. at 127-28. It found that the "information gleaned from random, suspicionless searches of a guest registry may indeed provide 'intimate details

about a person's activities and associations.'" Id. at 129 (quoting State v. McKinney, 148 Wn.2d 20, 30 n.2, 60 P.3d 46 (2002)). It therefore concluded that information contained in a motel registry constitutes a private affair. Id. at 130. The court then stated, "We hesitate to allow a search of a citizen's private affairs where the government cannot express at least an individualized or particularized suspicion about the search subject or present a valid exception to a warrantless search." Id. at 130. As a result, it held that "the practice of checking the names in a motel registry for outstanding warrants without individualized or particularized suspicion violated the defendant's article I, section 7 rights." Id.

In Nichols, the State Supreme Court examined its holding in Jorden. 171 Wn.2d at 376. There, a police informant told detectives that he had observed someone enter room 56 at a motel and return with cocaine. Id. at 371. About two hours later, officers went to the motel and asked the desk clerk who was registered in room 56. Id. at 371-72. The clerk provided the officers with a registration form showing that the registrant was Nichols. Id. at 372. The clerk also provided them with a copy of his driver's license, which the officers determined had been suspended. Id. When Nichols returned to the motel, the officers placed him under arrest for driving with a suspended license. Id. In a search incident to his arrest, they found cocaine and marijuana. Id. Nichols was later charged and convicted of possession of cocaine with intent to deliver and possession of less than 40 grams of marijuana. Id.

In a personal restraint petition, Nichols argued that the officers' warrantless search of the motel registry was improper under Jorden. Id. at 376. The court's lead opinion disagreed, explaining that "[a] fair reading of our opinion in Jorden is that motel guest registries are 'private affairs' only to a limited extent." Id. at 377. It went on to state,

> Indeed, in Jorden we recognized that in prior cases we have recognized that hotel or motel guest registries were not historically considered private when police officers had an individualized and particularized suspicion regarding a guest. Such a tiered understanding of what is a private affair under article I, section 7 of our state constitution is not without precedent. In a number of cases we have expressed displeasure at random and suspicionless searches, "fishing expeditions," while at the same time recognizing that searches of the same person or property with individualized suspicion can pass constitutional muster.

Id. at 377 (internal citation omitted). The court found that because the questioning of the clerk was not random and was conducted only because the police officers had individualized suspicion that drug selling activity had taken place in room 56, the examination of the registry did not violate the state constitution. Id. at 378-79.

Relying on her dissent in Jorden, Justice Madsen concurred in the result of the lead opinion. Id. at 379 (Madsen, C.J., concurring). In Jorden, she argued that Jorden had no privacy interest in information in the hotel registry. 160 Wn.2d at 136 (Madsen, J., dissenting). Absent a privacy interest, no particularized suspicion, let alone a warrant, would be required to access the information. See id. Thus, five justices rejected the argument that a warrant was required to access the hotel registry in Nichols.

6

In relying on Jorden and Nichols, the trial court stated,

The Court has reviewed both [Jorden] as well as [Nichols], and in the [Nichols] opinion I think both Counsel acknowledge, and the [S]tate Supreme Court reflects in a number of cases we have expressed displeasure at random and suspicionless searching fishing expedition[s] while recognizing search of the same person and property, and it goes on.

The Court is persuaded that the officer's efforts here were not random. It [wa]s not suspicionless. This was not a fishing expedition. The officer had a specific factual basis based upon the investigation that had been completed to that point in time to ask the clerk for information.

After responding to an alarm at a gas station and observing a shattered sliding glass door, Creech began a human scent track with his patrol dog, Earl. During the track, Earl displayed behavior consistent with actively tracking human scent. He stopped tracking in an area adjacent to the Courtyard Marriott hotel. Creech entered the hotel and asked the desk clerk if he had seen anyone matching a suspect description. The clerk responded that he had. Creech then showed the clerk a photo from the gas station's surveillance footage. The clerk confirmed that the person in the photo was the same person he had seen at the hotel. At that point, Creech asked the clerk if he could provide the name and room number of the individual. The clerk agreed and searched the hotel registry.

The Jorden court's holding was specific to the act of checking names in a motel registry without individualized or particularized suspicion. 160 Wn.2d at 130. It held that such searches violate a defendant's article I, section 7 rights. Id. Unlike Jorden, Creech's search was not random. Similar to Nichols, his search of the hotel registry was based on his individualized suspicion that a guest at the hotel

had committed a crime. Ramsey argues that the court's conclusion in <u>Nichols</u> that individualized suspicion alone supports a warrantless search of a motel registry was based on dicta in <u>Jorden</u>. The dissent in <u>Nichols</u> argued that <u>Jorden</u> did not authorize a motel registry search based only on an individualized and particularized suspicion. <u>Nichols</u>, 171 Wn.2d at 383 (Fairhurst, J., dissenting). The dissent firmly asserted that a warrant or an established exception to the warrant requirement was necessary to search the motel registry. <u>Id.</u> at 382-83. Five members of the court rejected the dissent's argument. <u>Id.</u> at 379 (Madsen, C.J., concurring). Accordingly, the trial court did not err in relying on <u>Jorden</u> and <u>Nichols</u> in denying Ramsey's motion to suppress the evidence discovered through Creech's search of the hotel registry.

We affirm.

_Appelwick, C.J._

WE CONCUR:

_Andrus, J._          _Coleman, J._